# THE PEOPLE OF THE STATE OF NEW YORK, Respond-ent, v. JOHN R. DUNN, Appellant.

*Indictment for larceny — it is not required to be drawn under a special class as defined in section 528 of the Penal Code — it is sufficient if the statement fairly apprises the defendant of the charge — evidence of corroboration — parties accessory before the act, defined — amendment of the corporate title of a bank.*

John R. Dunn was indicted, with one Richard S. Scott, for grand larceny in the first degree for stealing 150 gold certificates of the United States, of the value of $1,000 each, the property of the Bank of the Manhattan Company. The evidence given on the trial showed that the theft was committed by Scott, who at the time was paying teller of the bank; and evidence was given tending to show that the defendant Dunn counseled, induced and procured the theft to be committed.

Scott, who was used as a witness for the people, testified, in substance, that after having been guilty of peculations from the bank to the extent of $10,000, which he was unable to restore, he applied to Dunn, a practicing lawyer and a cousin of his wife, for advice, and that Dunn advised him to take as large a sum from the bank as he could lay hold of and then abscond to Canada, leaving the funds, thus to be stolen, in the hands of some confidant in this State; that, in pursuance of such advice, he took from the bank the $150,000, gave the money to Dunn to keep for him and absconded to Canada; that Dunn, from time to time, transmitted small sums from the stolen fund to him (Scott). Scott subsequently went to England, and while he was there negotiations were opened between Scott and the bank for the return of the stolen property; Dunn, being called upon for the stolen funds, with which to effect a compromise, failed to produce them, claiming that he had lost them in speculation.

The people sought to corroborate Scott by his wife and her brother and sister, who testified to conversations with, and admissions on the part of, Dunn after the theft had been committed and while negotiations were pending for the restoration of the stolen property.

Upon an appeal from a judgment convicting the defendant, it was contended that there was a variance between the proof and the indictment, in that the charge in the indictment was that the defendants "did take, steal and carry away" the property therein mentioned, instead of charging the offense created by the second subdivision of section 528 of the Penal Code; that is, as an appropriation to his own use by a clerk having property in his possession.

*Held,* that it was not necessary that an indictment should be drawn specifically, under one or the other of the special classes of larceny, as defined by the Code.

That it was sufficient that the indictment charged the crime, and then gave a plain and concise statement of the facts, and that if that statement was such as to fairly apprise the defendant of the charge made against him, it was sufficient.

*People* v. *Dumar* (106 N. Y., 502) distinguished.

That if the word "steal" was to be considered in its technical meaning, then its use was proper because the act here committed was larceny at common law.

That if the words used were to be considered in their ordinary interpretation in common language, then the terms employed were equally appropriate, and that by either rule they clearly and fully informed the defendant of the charge which was made against him.

That, under the system of pleading instituted by the Code of Criminal Procedure, it was perfectly proper to charge the defendant with either having stolen the property or as a clerk having appropriated it to his own use:

It was claimed that there was no sufficient corroboration of Scott, because the witnesses, the wife of Scott, and her brother and sister, were accomplices or accessories after the fact, and that the court erred in charging the jury to the contrary.

*Held,* that the rule, as laid down in the charge of the court in this respect, was correct; that, to constitute an accessory, the person must help the principal to elude or evade capture, and as none of the witnesses referred to were cognizant of the crime until long after its commission, and until the defendant was secure from capture by his departure to a foreign country, and as no one, except his wife, rendered any aid or assistance to him, except so far as they intervened or assisted in the compromise with the bank, that there was not shown to have been any participation by any of these parties which rendered them accessories.

Nor did the fact that they received part of the stolen property, knowing it to be stolen, if it were assumed that that fact was established.

Mrs. Scott testified that the defendant told her: "Lizzie, if it hadn't been for me he wouldn't have taken as much as he did, he would have gone with a great deal less; and if he had taken my advice he would have taken money enough to cripple the bank."

*Held,* that the corroboration of Scott as to the larceny was sufficient, as this statement went to the question of larceny and not to the mere receiving of the stolen property.

That the statement in the indictment, of the property stolen, was sufficient within the authorities, and that the evidence was sufficient to show that the certificates stolen were circulated as money at their nominal value.

That an amendment in the indictment of the corporate title of the bank was authorized by sections 281 to 293 of the Code of Criminal Procedure, as the amendment did not affect the substance of the charge against the defendant, and as the owner of the property charged in the indictment and the owner as proved on the trial were the same.

*People* v. *Herman* (45 Hun, 175) followed.

APPEAL by John R. Dunn from a judgment rendered at the New York Court of Oyer and Terminer, which was entered after an indictment and conviction of the said John R. Dunn, on June 19, 1888, of grand larceny in the first degree.

*Silas M. Stilwell,* for the appellant.

*William Travers Jerome,* for the respondent.

CULLEN, J.:

The appellant was indicted with one Richard S. Scott for grand larceny in the first degree, for stealing 150 gold certificates of the United States, of the value of one thousand dollars each, the property of the Bank of the Manhattan Company. The evidence given upon the trial showed that the theft was committed by Scott, who, at the time, was paying teller of the bank; and evidence was given tending to show that the defendant Dunn counseled, induced and procured the theft to be committed. Scott was used as a witness for the people. He testified, in substance, that having committed peculations from the bank to the extent of $10,000, which he was unable to restore, he applied to Dunn, a practicing lawyer and a cousin of his wife, for advice. That Dunn advised him to take as large a sum from the bank as he could lay hold of, and then abscond to Canada, leaving, however, the funds to be stolen in the hands of some confidant in this State; that under the treaties Scott could not be extradited from Canada for simple theft; that by leaving the stolen property in this State he would avoid the penalties of the Canadian law, as to bringing stolen property within the dominion; with the funds so stolen a compromise could subsequently be effected with the bank; that in pursuance of such advice he took from the bank the $150,000, gave the money to Dunn to keep for him, and absconded to Canada. Scott subsequently went from Canada to England. Dunn, from time to time, transmitted small sums from the stolen funds to Scott. While in England negotiations were opened between Scott and the bank for the return of the stolen property. When Dunn was called upon for the stolen funds with which to effect the compromise he failed to produce them, claiming that he had lost them in speculation. The theft from the bank was also proved by its cashier. The people sought to corroborate Scott by his wife and her brother and sister, who testified to conversations with and admissions on the part of Dunn, after the theft had been committed, and when negotiations were pending for the restoration of the stolen property. The defendant offered no evidence. A motion was made at the close of the testimony that the jury be instructed to acquit the defendant. This motion was denied. The defendant was convicted, and sentenced upon conviction.

The questions discussed on this appeal arise upon the denial of the motion to direct the jury to acquit. The first contention is that there was a variance between the proof and the indictment. The charge in the indictment was that the defendants "did take, steal and carry away" the property therein mentioned. It is not disputed that the offense committed would have been larceny before the Penal Code, because the property stolen had been in the possession of the bank before it was abstracted by Scott. It was also made larceny by the Penal Code, but it is claimed that the offense should have been charged under the second subdivision of section 528 of the Penal Code; that is, as an appropriation to his own use by a clerk having property in his possession. This claim is made on the authority of The People v. Dumar (106 N. Y., 502); there the defendant was charged with having "taken, stolen and carried away" certain property. The evidence showed that he obtained the property by false pretenses. It was held that the indictment did not state the offense which was proved against the defendant, and for the variance the conviction was reversed. While the Code makes embezzlement and obtaining goods under false pretenses larceny, it was held that under the Code of Criminal Procedure (§§ 254–275), the indictment must not only charge the crime, but state the act constituting the crime; and that the act stated as constituting a crime in the indictment was different from the act proved, and hence the variance. In the opinion delivered in that case the court, indeed, do lay down the doctrine that larceny can now be committed in four separate ways, and that it was the intention of the legislature to abolish those refinements and distinctions which had so often perplexed the court as to when an offense is larceny and when embezzlement. But there is nothing in the opinion which gives ground for the claim that when the legislature abolished the old distinctions between larceny, false pretenses and embezzlement they intended to create a new classification of offenses and raise the same difficulties as to determining between the various offenses as existed under the old practice.

It is not necessary that an indictment should be drawn under one or the other of the special classes of larceny as defined by the Code. If so, there would be no improvement in the codification of this branch of the law; for instead of having three crimes, as formerly, to per-

plex the administration of justice, there would be now four. It is sufficient that the indictment charges the crime, and then gives a plain and concise statement of the act. It is sufficient if that statement be such as to fairly apprise the defendant of the charge made against him. All that was decided in the *People* v. *Dumar* was that the act stated differed from the one proved. No such criticism could justly be made on the statement here.

By the Code of Criminal Procedure (§ 282), words are to be construed in their usual acceptation, in common language, except such as are defined by law, and those are to be construed according to their legal meaning. If the word "steal" is to be considered in its technical meaning, then its use was proper, because the act here committed was larceny at common law. If the words used are to be considered in their ordinary interpretation, in common language, then the terms employed were equally appropriate. By either rule, they fairly and fully informed the defendant of the charge which was made against him. We think that in a case similar to this, and under the system of pleading instituted by the Code, it is perfectly proper to charge the defendant with either having stolen the property or, as a clerk, having appropriated it to his own use.

It is next claimed that there was no sufficient corroboration of Scott, because the witnesses, Mrs. Scott, Mrs. Searles and William Cross, were accomplices, or accessories after the fact, and that the court erred in charging the jury to the contrary. We think the ruling and charge of the court in this respect was correct. Assuming that an accessory after the fact is an accomplice within the meaning of the Code, it is clear that none of these witnesses were accessories.

Mr. Bishop, in his work on Criminal Law (§ 695) enunciates the rule that "The true test for determining whether one is accessory after the fact is to consider whether what he did was done by way of personal help to his principal with a view of enabling the principal to elude punishment." So, to furnish one with a horse to escape, or to conceal or rescue the principal, renders one an accessory, but not so the failing to make known the felony; forbearance to arrest, or charitably supplying the prisoner with food, or agreeing not to prosecute, or preventing the attendance of witnesses. To the same effect is Wharton's Criminal Law (§ 241.) Under this rule,

plainly none of these witnesses were accessories. In fact, the rule itself is stated too broadly by Mr. Bishop, as is shown by the cases cited by him, where it has been ruled that the prisoners were not accessories. To constitute an accessory, it is not sufficient to assist the prisoner to elude punishment, because failing to prosecute or preventing the attendance of witnessess would produce that result. But to constitute the offense one must help the principal to elude or evade capture. None of the witnesses referred to were cognizant of the crime till long after its commission, and till the defendant was secure from capture by his escape to a foreign country. None, except his wife, rendered any aid or assistance to him, except so far as they intervened or assisted in negotiating for a compromise with the bank. The wife visited Scott in London, and resided there with him. In that respect she did nothing to render her an accessory. Her husband was beyond the jurisdiction or reach of our tribunals; and, further, the relation of wife to husband at common law exempted Mrs. Scott from liability as an accessory. (Wharton § 243.) She also assisted in the negotiations for the settlement; but under the authority cited no participation by any of those parties in that negotiation rendered the parties accessories. Nor would the fact that they received part of the stolen property, knowing it to be stolen, if we assume that fact to exist, have such effect. (Bishop's Crim. Law, §§ 692, 695–699.) There was, therefore, nothing in the case to support the defendant's claim that these witnesses were accomplices.

The corroboration of Scott as to the larceny was sufficient. Mrs. Scott testified that the defendant told her, " Lizzie, if it hadn't been for me he wouldn't have taken as much as he did, he would have gone off with a great deal less; and if he had taken my advice he would have taken money enough to cripple the bank." This goes right to the point of the larceny, and not to the mere receipt of the stolen goods, which was abundantly proved by the testimony of the witnesses Searles and Cross, and the letters of the defendant.

The statement in the indictment of the property stolen was sufficient within the authorities, *People* v. *Loop* (3 Parker Cr., 559); *People* v. *Jackson* (8 Barb., 637), and the evidence is sufficient to show that the certificates stolen were circulated as money at their nominal value.

The amendment of the corporate title of the bank was authorized by the Code of Criminal Procedure (§§ 281–293). This amendment did not affect the substance of the charge against the defendant. The owner of the property charged in the indictment and the owner as proved on the trial were the same. The amendment only corrected a misnomer, and, therefore, falls far within the decision of this court in *The People* v. *Herman* (45 Hun, 175).

Complaint is made of the following part of the charge of the court : " The prosecution has, in the first place, given you the evidence of Scott. He says that Dunn was concerned in the commission of the crime and counseled it ; and more, that after he, Scott, had taken the gold certificates, Dunn received them knowingly, and acted as their guilty custodian. Of course, if that be true, there can be no doubt of Dunn's criminal responsibility." We find no exception to this part of the charge, and if there were such, it would be untenable. When the learned judge said " If that be true, there can be no doubt of Dunn's criminal responsibility," he does not refer alone to Dunn's receiving the stolen certificates, but to Scott's whole statement that Dunn was concerned in the commission of the crime, and counseled it. In the light of the whole charge, it is not possible that the jury could have misconceived this statement.

We have thus examined the various rulings on this trial of which the defendant complains, and find that no error was committed. The evidence was ample to justify the defendant's conviction, and the judgment appealed from should be reaffirmed.

VAN BRUNT, P. J., concurred.