MATTER OF SLOAN

In Deportation Proceedings

A-10393612

*Decided by Board August 18, 1966 and December 21, 1966*

*Decided by Attorney General August 30, 1968*

Conviction under 18 U.S.C. 1071 of knowingly harboring and concealing a person for whose arrest a warrant has been issued is conviction of a crime involving moral turpitude.

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of a crime committed within five years after entry and sentenced to a year or more (18 U.S.C. 4, 371, 1071).

ON BEHALF OF RESPONDENT:　　　　　ON BEHALF OF SERVICE:
Ben C. Shapero, Esquire　　　　　　　L. Paul Winings
2902 Cadillac Tower　　　　　　　　　General Counsel
Detroit, Michigan 48226

BEFORE THE BOARD

(August 18, 1966)

This is an appeal from the order of the special inquiry officer ordering respondent deported on the charge stated in the caption.

Respondent, a 46-year-old twice divorced female, a native and citizen of Canada, was admitted to the United States for permanent residence on December 5, 1955. After an interval of commuter status she took up residence in the United States (January 31, 1959). The Service charges she is deportable because she was convicted on April 23, 1965 in the United States District Court at Detroit, Michigan for offenses arising out of incidents which began about September 1, 1960 and continued to March 1961. Respondent received a suspended sentence to imprisonment for two years. Counsel contends the crimes do not involve moral turpitude.

The facts revealed by the indictment are that Thomas Viola, convicted for murder in the State of Ohio, started serving a sentence of

840

life imprisonment in 1946. As part of a conspiracy, he escaped from custody in 1960. Other members of the conspiracy rented an apartment for him. Subsequently, the respondent rented an apartment for him and lived with him. All the conspirators harbored and concealed Viola.

Respondent was convicted on four counts. Count one charged her with violating 18 U.S.C. 371 which makes it a crime for persons to conspire "either to commit any offense against the United States, or to defraud the United States." The count charged there was a conspiracy "to commit offenses against the United States, that is, violations of Title 18, United States Code, sections 1073, 4 and 1071." (Respondent was not convicted under section 1073; she was convicted under sections 371, 4 and 1071 (two counts).)

A conviction for conspiracy to commit an offense does not involve moral turpitude unless the substantive crime involves moral turpitude (*Matter of E—,* 9 I. & N. Dec. 421, 422; *Matter of P—,* 5 I. & N. Dec. 582; and *Matter of S—,* 2 I. & N. Dec. 225). We do not believe that moral turpitude is involved in the substantive violations here (18 U.S.C. 4 and 18 U.S.C. 1071).

Count three and count four charged harboring of Viola for a different period of time. Section 1071 of Title 18, United States Code, makes it a crime knowingly to harbor or conceal a person for whose arrest a warrant has been issued. It carries with it a fine of not more than $1,000 or imprisonment of not more than one year. We do not believe this crime involves moral turpitude: it does not require force, it does not require an evil intent, and it does not require the commission of an act that is of the vileness or depravity needed for a finding that moral turpitude is involved. It is not even necessary that a conviction exist or that there be an escape from prison; it is only necessary that there be a warrant outstanding. (The fact that a conviction exists merely enhances punishment.) The act for which the person is sought or for which he was convicted is immaterial. A mother can be convicted for harboring her son or a wife her husband under this statute.

It is the inherent nature of the offense under any and all circumstances and not exaggerated forms of the crime which determine whether a crime involves moral turpitude (*U.S. ex rel. Manzella* v. *Zimmerman,* 71 F. Supp. 534, E.D. Penna.). In other words, it is not what the convicted person did but what the law defines that determines if moral turpitude is present. We have here a case of harboring. Precedents hold that more serious crimes somewhat related do not involve moral turpitude. A court has ruled that one convicted for breaking prison has not committed a crime involving moral turpitude (*U.S. ex*

*rel. Manzella* v. *Zimmerman, supra*). In *Matter of J—*, 4 I. & N. Dec. 512, a conviction for attempting to escape from a Massachusetts reformatory was held not to involve moral turpitude although there was an assault and overpowering of a guard. The statute violated did not define escape in the terms of intent nor did it speak of force or violence. In *Matter of B—*, 5 I. & N. Dec. 538, we held that unlawfully aiding one to escape from jail was not a crime involving moral turpitude. Under these circumstances, we do not believe a conviction under 18 U.S.C. 1071 would be considered by society as an act of baseness or vileness or depravity in private or social duties which man owes his fellow man or society in general (*U.S. ex rel. Manzella* v. *Zimmerman, supra*, p. 537).

In reaching the conclusion that moral turpitude was involved, the special inquiry officer relied upon the fact that Viola had been convicted for the crime of murder. As we have pointed out, conviction under 18 U.S.C. 1071 may be had whether the person harbored has been convicted or not. It is only necessary that there be a warrant outstanding. Although punishment is enhanced if the person harbored has been convicted, it is not necessary that the conviction be of a crime which itself involves moral turpitude. The fact that Viola was convicted and the nature of the crime for which he was convicted is therefore immaterial in determining whether respondent's conviction for harboring involved moral turpitude.

The conviction under 18 U.S.C. 4 (misprision of a felony) does not involve moral turpitude. The section makes it a crime for a person who knows of the commission of a felony to conceal the fact from a proper authority. Violation is punishable by fine up to $500 or imprisonment up to three years or both. Here again, neither the means by or intent with which misprision is committed, nor the nature of the crime concealed is a factor. If aiding a prisoner to escape who has been convicted does not involve moral turpitude, it is difficult to see how the mere failure to furnish information as to the escape should involve moral turpitude.

The record fails to establish that the crimes of which the respondent was convicted involved moral turpitude. The proceedings will be terminated.

The special inquiry officer has properly disposed of contentions of counsel concerning the relation of the time of conviction and entry, and the nature of a suspended sentence under the immigration laws. We find it unnecessary to rule on whether respondent's adandonment of her commuter status to take up actual residence in the United States in 1959 constituted an "entry" for the purposes of the im-

migration law. For the purpose of this discussion, we have assumed that an "entry" occurred.

**ORDER:** It is ordered that the proceedings be and the same are hereby terminated.

### BEFORE THE BOARD

#### (December 21, 1966)

The facts have been fully stated in previous orders. The question is whether the Board erred in holding that respondent's convictions do not involve moral turpitude.

Thomas Viola was confined for life in a state prison after conviction for murder. Respondent and others helped him escape; then respondent lived with him as his wife. She was convicted for harboring a person for whom a warrant of arrest had issued (18 U.S.C. 1071), and for failing to inform authorities that a convicted person had traveled interstate to avoid confinement (18 U.S.C. 4; an active concealment appears necessary for conviction).[1] The counts on which respondent was convicted alleged that she had known Viola was sought for fleeing to avoid imprisonment after conviction for murder. We held that such knowledge was not material since the laws violated did not require proof of such knowledge before a conviction could be obtained.[2] We held that moral turpitude was not involved because the laws violated inherently required neither an evil intent nor a depraved act for a conviction.[3] The Service, however, contends that since respondent's knowledge that Viola was a murderer is revealed by the record (her indictment), we must consider this fact as material and with it as a part of our deliberations find that she committed acts which were turpitudinous in nature. In other words, the contention appears to be that the test as to moral turpitude is not whether the law requires turpitudinous acts for a conviction, but

---

[1] A conviction for conspiracy to commit the previously mentioned offenses (18 U.S.C. 371) need not be discussed since such a conspiracy conviction does not involve moral turpitude unless the substantive crime does.

[2] The fact that the person harbored had committed a felony or that he had been convicted did affect punishment. However, allegations pertinent to the enhancement of punishment are not material in determining whether moral turpitude is involved (*U.S. ex rel. Zaffarano* v. *Corsi*, 63 F.2d 757, 758 (2d Cir., 1933).

[3] See *United States* v. *Oley*, 21 F. Supp. 281, 282 (D.C.N.Y., 1938) ". . . while it might be regarded as inhuman and unnatural on the part of a wife to surrender her husband to the authorities and contrary to the instincts of human beings to do so, nevertheless wives can be convicted of illegally harboring their husbands."

whether the record shows that the alien committed turpitudinous acts. We believe the Service position is erroneous and arises out of (1) a misreading of the precedents, and (2) reliance on a variant rule which is confined mainly to broadly worded statutes of a type not involved here.

We shall first state the general rule for determining whether a conviction involves moral turpitude under immigration laws.

[Moral turpitude] must be determined in the first instance from a consideration of the crime as defined by the statute. If, as defined, it does not inherently or in its essence involve moral turpitude, then no matter how immoral the alien may be, or how iniquitous his conduct may have been in the particular instance, he cannot be deemed to have been guilty of base, vile, or depraved conduct, *U.S. ex rel. Zaffarano v. Corsi*, 63 F. (2d) 757 (C.C.A. 2nd, 1933) ; *U.S. ex rel. Meyer v. Day*, 54 F. (2d) 336 (C.C.A. 2nd, 1931) ; *U.S. ex rel. Mylius v. Uhl, supra* [203 Fed. 152 (S.D.N.Y., 1913), aff'd 210 Fed. 860 (C.C.A. 2nd, 1914)] ; 39 Op. Atty. Gen. 215, 220 (1938) ; 37 Op. Atty. Gen. 293 (1933). It is only where the statute includes within its scope offenses which do and some which do not involve moral turpitude, and is so drawn that the offenses which do embody moral obloquy are defined in divisible portions of the statute and those which do not in other such portion, that the record of conviction, *i.e.*, the indictment (complaint or information), plea, verdict and sentence is examined to ascertain therefrom under which divisible portion of the statute the conviction was had and determine therefrom whether moral turpitude is involved. See *U.S. ex rel. Guarino v. Uhl*, 107 F. (2d) 399 (C.C.A. 2nd, 1939; *U.S. ex rel. Zaffarano v. Corsi, supra; U.S. ex rel. Valenti v. Karnuth*, 1 Fed. Supp. 370 (N.D.N.Y., 1932).

(*Matter of S—*, 2 I. & N. Dec. 353, 357 (approved by Atty. Gen. [Clark] 1945).)

The rule set forth exists because a standard must be supplied to administrative agencies; it eliminates the burden of going into the evidence in a case; it eliminates the situation where a nonjudicial agency retries a judicial matter; and it prevents the situation occurring where two people convicted under the same specific law are given different treatment because one indictment may contain a fuller or different description of the same act than the other indictment; and makes for uniform administration of law (*Matter of R—*, 6 I. & N. Dec. 444, 448).

In our opinion, the Service questioning of the general rule is due in part to a strained interpretation of the precedents. *Mylius, supra*, a leading precedent for the rule that it is not what the person did but what the law requires for conviction that determines whether moral turpitude is present, instructs the administrative authorities to confine themselves to the judgment of conviction and to disregard the *testimony* on which the alien had been convicted. From this, the Service concludes that while conduct revealed by *testimony* cannot be considered for the purpose of deciding whether the alien had engaged in turpitudinous acts, conduct revealed in the record of the conviction can be. The Service conclusion is unwarranted. The question before the court was essentially whether *conduct* or *law* violated was to be used as the test for the turpitudinous nature of the con-

viction. It is in light of its conclusion that law not conduct was to govern that its remarks must be viewed.

In *Mylius* the court said the law must *inherently* involve moral turpitude. The Service interpretation would nullify the court's holding; for, it stands to reason that, if knowing what law has been violated, the Service cannot find moral turpitude without considering the conduct of the alien, it is not the *law* violated that involves moral turpitude, but the alien's *conduct*.

The court in *Mylius* was moved to make law, not conduct controlling so that there would be equal treatment of aliens convicted under the same law. Contrary to this concept, the Service would make deportable the alien whose indictment specifies base conduct, while another alien whose indictment lacks detail, but who was guilty of similar conduct and who was convicted under the same law, would not be deportable.

Many courts have read *Mylius* as requiring the law to inherently involve moral turpitude. In *U.S. ex rel. Teper* v. *Miller*, 87 F. Supp. 285 (S.D.N.Y., 1949), the court listing many citations held that when the provisions of law violated are known, and the fact of conviction has been established, it is not even necessary to have the indictment in the record since the test is whether the *law* inherently involves moral turpitude.

Courts have refused to consider conduct *shown by the record* when the law did not require proof of such conduct for a conviction. In *Hirsch* v. *Immigration and Naturalization Service*, 308 F. 2d 562, 567, (9th Cir., 1962), the court disregarded allegations in an indictment concerning the making of "false and fraudulent statements" since conviction was possible without proof of a fraudulent act. In *U.S. ex. rel. Guarino* v. *Uhl*, 107 F.2d 399 (2d Cir., 1939), allegations in an indictment that the alien was in possession of an instrument commonly used to commit burglary and larceny were disregarded since conviction was possible without proof that it was these crimes which the alien intended to commit. In *U.S. ex rel. Valenti* v. *Karnath*, 1 F. Supp. 370 (N.D.N.Y., 1932), allegations in an indictment as to robbery were disregarded because not required for conviction. Administratively, the rule has been similar. In *Matter of B—*, 6 I. & N. Dec. 98, 106–108, allegations of the indictment as to commission of acts of intimidation were disregarded as unnecessary to conviction. In *Matter of R—*, 6 I. & N. Dec. 444, 447–454, allegations as to compelling commission of immoral acts were disregarded because conviction did not have to be based on such acts.

Service reliance on *U.S. ex rel. Zaffarano* v. *Corsi*, 63 F.2d 757 (2d Cir., 1932), is misplaced. The Court remanded the case so that the in-

dictment would be considered in determining *what section of the law was* involved. The finding as to moral turpitude was to be based not on what the alien did but on what the law punished.[4] Many cases cited by the Service as permitting resort to the record are in accord with the rule that conduct shown by the record may be examined to determine what particular section of law was violated.

*U.S. ex rel. Manzella* v. *Zimmerman*, 71 F. Supp. 534 (E.D. Pa., 1947), involved an indictment charging the defendant with breaking prison and escape with force and arms. The Service belief that the court would have come to a different conclusion had the alien's conduct been spelled out in the record with greater particularity is not justified. The indictment did show violence was used. There is no express language to support the Service belief and such an inference is without basis in a case in which the court pointed out that, "it is the inherent nature of the offense under any and all circumstances which we are considering. Aggravated forms of the crime are not controlling. The proper test [as to the existence of moral turpitude] is to consider whether a prison breach accomplished by the least imaginable force involves moral turpitude" (at 537). The court merely looked to the indictment to determine whether the alien's conviction had been for a prison breach as well as for escape. The court then attempted to determine whether the law inherently involved moral turpitude and found it did not because it could be violated by acts which did not involve moral turpitude. The court was not concerned with the alien's conduct other than to determine what specific provision of the law the conviction was based on.

*Tseung Chu* v. *Cornell*, 247 F. 2d 929 (9th Cir., 1957), cert. den. 355 U.S. 892[5] while containing some puzzling language, hardly supports the Service view that conduct shown by the record may be considered even though not an essential part of the crime. We note the court agreed there should be no consideration of "unnecessary adjectives added to the indictment by a 'zealous and over careful prosecutor'." (at 936) The fact is that moral turpitude was found because the conduct in question (fraud) had to be established in order to obtain a conviction (*Tomlinson* v. *Lefkowitz*, 334 F. 2d 262, 266 (5th Cir., 1964), cert. den. 379 U.S. 962).

---

[4] On page 7 of the Service motion, mention of *U.S. ex. rel. Robinson* v *Day*, 51 F.2d 1022 (C.A. 2, 1931) appears unintentional. It is the *Zaffarano* case which is actually the subject of the discussion.

[5] The concurring opinion indicates that conduct *outside* the record may be considered in determining whether a crime involving moral turpitude had been committed.

*Bisaillon* v. *Hogan*, 257 F. 2d 435 (9th Cir., 1958), cert. den. *Bisaillon* v. *Sureck*, 358 U.S. 872, an immigration case involving convictions for knowingly making false statements to induce the issuance of passports, indicates that a law need not inherently involve moral turpitude. However, it is noted that the finding of deportability turned upon the fact that the *statute* defined a crime likened to perjury which it was conceded involved moral turpitude. Moreover, a later decision in the same circuit, *Wadman* v. *Immigration and Naturalization Service*, 329 F.2d 812 (9th Cir., 1964), reveals that the court when confronted with *conduct* shown by the record to clearly involve moral turpitude (receiving goods, knowing them to have been stolen) held that the conviction involved moral turpitude because *conviction could not be had without proof of guilty knowledge*. (Under the Service theory, the court should have been able to find moral turpitude whether the law required guilty knowledge or not, since the record showed that the conduct involved moral turpitude.)

The Service position is in part due also to its misuse of a variant rule. The variant rule, confined to broadly worded laws, permits consideration of conduct not only to determine the particular portion of law violated, but also to determine whether moral turpitude was involved.

A brief review of the variant rule will be made. Some laws (as the one in *Mylius*) condemn acts in terms which have gained particularity (murder, theft, libel, *etc.*); other laws, because of the number and varied nature of the acts which they desire to condemn, find it difficult to state the acts with particularity and, therefore, condemn acts in a general sense (immoral conduct, committing a crime, *etc.*) or condemn acts which produce a certain result (making a person a juvenile delinquent). Where a conviction is based on a generally worded law which could be violated by the doing of acts some of which do and some of which do not involve moral turpitude, it would appear from *Mylius*, which requires consideration of the law in its minimum aspect, that moral turpitude is not involved even if the information reveals that the specific act of the convicted person did involve moral turpitude. This approach was attempted but after some searching, a contrary conclusion was reached in cases involving these generally worded laws.

*Matter of C—*, 5 I. & N. Dec. 65, involved a conviction for contributing to the delinquency of a minor. The information showed that the alien's conduct was abhorrent. Application of *Mylius* resulted in a finding that moral turpitude was not involved because the law could have been violated by acts not turpitudinous. However, upon reconsideration, the Board settled on the rule that in "broad divisible

statutes which involve acts which do and acts which do not involve moral turpitude" the act of the individual as shown by the record may be used to determine whether moral turpitude is involved.[6] Service attempt to use the variant rule was rejected by the Board in a case which did not involve a broad statute even though the conduct was described in the record (*Matter of B—*, 6 I. & N. Dec. 98). The Board did not obliterate this distinction in subsequent cases (see *Matter of Lethbridge*, Int. Dec. No. 1539; *Matter of G—*, 7 I. & N. Dec. 114). Since we do not have before us a broadly worded law, we need not further discuss this variant rule or the Service cited cases dealing with it.[7]

In the instant case, the *Mylius* rule must be applied. The law defines the conduct necessary for conviction with particularity and (as shown in our order of August 18, 1966) does not make the conduct relied upon by the Service (knowledge that the person involved was convicted of murder) an element of the crime. Since our conclusion must be based only on that which had to be shown to establish guilt, we believe that we correctly found moral turpitude was not involved in respondent's convictions.

**ORDER:** It is ordered that the motion be and the same is hereby denied.

**Thomas J. Griffin, Member, Dissenting:**

There is a basic precept in logic that one cannot assume to be true that which he is seeking to establish. This is called *petitio principii*, or "begging the question." There is a second principle of logic which states that one argument cannot be answered by resorting to a second argument having no relevance to the first. This is called *ignoratio elenchi*. The majority opinion is in violation of these precepts and, therefore, is illogical and in error. I am, accordingly, filing my dissent.

Section 1071, 18 U.S.C., is part of Chapter 49, which is captioned "Fugitives From Justice." Section 1071 is captioned "Concealing Person From Arrest." Section 1071 reads as follows:

Whoever harbors or conceals any person for whose arrest a warrant or process has been issued under the provisions of any law of the United States, so as to prevent his discovery and arrest, after notice of knowledge of the fact that

---

[6] Using *Mylius* terminology, an explanation given, is that the general statute is a divisible one, and one of its divisions punishes only acts of a turpitudinous nature which are similar.

[7] Our discussion of the variant rule, since we do not have such a situation before us, is general and for the purpose of contrast.

a warrant or process has been issued for the apprehension of such person, shall be fined not more than $1,000, or imprisoned not more than one year, or both: except that if the warrant or process issued on a charge of felony, or after conviction of such person of any offense, the punishment shall be a fine of not more than $5,000, or imprisonment for not more than five years, or both.

The majority opinion is to the effect that the crime is described with particularity and that it cannot be said of itself to describe an act involving moral turpitude. With this I differ.

The majority cites with approval 37 Op. Atty. Gen. 293. At page 294 of the above cited volume the Attorney General describes moral turpitude as:

. . . everything done contrary to justice, honesty, or good morals is done with turpitude. It is a vague term, its meaning depending to some extent upon the state of public morals. It is defined as anything done *contrary to justice*, honesty, principle, or good morals; an act of baseness, vileness or depravity in the private and *social duties* which a man owes to his fellow man, or to *society in general* contrary to the accepted and customary rule of *right and duty between man and man* . . . . [Emphasis supplied.]

Now to hold that one who has been convicted of concealing or harboring with knowledge or notice that a warrant or process had been issued for the arrest of that person is not guilty of a crime involving moral turpitude amounts to ignoring completely the factors of anything "done contrary to justice, . . . and social duties which man owes to his fellow man or to society in general." Legally constituted authorities were empowered to arrest the felon Viola. For personal reasons the respondent prevented that arrest with knowledge that a process had been issued for Viola's arrest. Thus, the respondent effectively obstructed the arrest and she, therefore, ignored certain social duties which she owed to her fellow man and to society in general. A conviction under 1071 necessarily involves obstruction of justice and frustration of lawful authority. The act for which the respondent stands convicted was certainly done contrary to justice. In the *Matter of E—* 9 I. & N. Dec. 421, this Board held that a conviction for impeding, obstructing and attempting to defeat the lawful functions of an agency of the United States is a crime involving moral turpitude. The collocation of the words "harbor and conceal" in the statute conclusively shows that it is directed to those who abet others in avoiding process and arrest after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of the fugitive. The word "harbor" in a criminal statute connotes surreptitious concealment. *United States* v. *Mack*, 112 F.2d 290, 291, and is basically related to the offense of accessory after the fact, cf. *Chapman* v. *United States*, 3 Fed. Supp. 903 (1933) and *United States* v. *Venturini*, 1 Fed. Supp. 213.

As a verb, defined by Webster (The New International Dictionary, 2d ed., unabridged), it is defined as "to afford lodging to; to entertain as a guest; to shelter; to receive; to give a refuge to; to contain; to indulge or cherish (a thought or feeling) ;—now usually with reference to *evil*, esp. *unlawful*, *act* or *intent*." [Emphasis supplied] This defiinition was cited with approval by the court in *Herrera* v. *United States*, 208 F.2d 215, 218.

In the case of *Dennis* v. *State*, 102 Northeast 2d, 650, 653, the Supreme Court of Indiana defined the verb "harbor" as meaning to shelter, to give refuge, to give lodging to, caring for and protecting any person gulity of a felony. In that same decision the Court defined "conceal" as meaning to hide; to secrete, keep out of sight or prevent the discovery of one guilty of a felony.

From the above description of the crime and with careful consideration of the meaning of moral turpitude, it is obvious that the respondent was convicted of a crime involving moral turpitude. It is my firm belief that public justice is hampered by assisting the felon in evading the law.

Another facet of the majority opinion which is open to some question is found in a reading of footnote No. 3, at page 2 of the opinion. The footnote is preceded by the statement in the text to the effect that "We held that moral turpitude was not involved because the laws violated inherently required neither an evil intent nor a depraved act for a conviction." The footnote then cites the case of *United States* v. *Oley*, 21 Fed. Supp. 281, 282 (D.C.N.Y., 1938) and quotes from that case as follows:

* * * while it might be regarded as inhuman and unnatural on the part of a wife to surrender her husband to the authorities and contrary to the instincts of human beings to do so, nevertheless wives can be convicted of illegally harboring their husbands.

This quotation is not entirely accurate inasmuch as it is taken out of context with a complete sentence which reads as follows:

It would, undoubtedly, be diffiuclt to obtain confessions charging wives with harboring their husbands, and while it might be regarded as inhuman and unnatural on the part of a wife to surrender her husband to the authorities and contrary to the instincts of human beings to do so, nevertheless wives can be convicted of illegally harboring their husbands.

This, of course, reads a bit differently from the way it is cited by the majority opinion, and indeed a complete research of the law on this particular point fails to show any case where a wife has been convicted of illegally harboring her husband. Furthermore, to use this particular aspect of the question as a basis for holding that moral turpitude is not involved is certainly an example of *ignoratio elenchi*. It has no

pertinence to the question of moral turpitude, nor does the statement have any substantial bearing at all in the case involved. In an attempt at enlightenment on this particular factor, the following cases are cited as proof positive that wives simply are not prosecuted or convicted for illegally harboring their husbands: *State* v. *Kelly*, 74 Iowa 589, 38 N.W. 503; *People* v. *Dunn*, 53 Hun. 381, 6 N.Y.S. 805, 7 N.Y. Crim. 173: 5 Blackstone Comm. p. 39; 1 Hale P.C., p. 621; 2 Hawkins P.C., c. 29, sec. 34. *State* v. *Fitzgerald*, 49 Iowa 260; 1 Whart Crim. Law, sec. 71, *et seq.*; 1 Bish Crim. Law, sec. 358, *et seq.*

I now refer to an aspect of this case which the majority opinion has newly christened a "variant rule" (an anomalous nomenclature which is probably contradictory in terms). The majority opinion relies upon its interpretation of the alleged *Mylius* rule, which was stated in the case of *United States ex rel. Mylius* v. *Uhl*, 203 F.2d 152 (S.D. N.Y. 1913), affirmed at 210 Fed. 860 (Circuit Court of Appeals 2d, 1914), and states arbitrarily that the statute here involved is not sufficiently broad to permit resort to the conviction of record. A reading of the court's decision in the *Mylius* case simply does not jibe with the majority interpretation. That case involved an alien who had been convicted of criminal libel prior to his application for entry into the United States and the Immigration authorities were seeking to exclude him from admission on the ground that he had been convicted of a crime involving moral turpitude. In speaking of the right of the Immigration authorities to ascertain the turpitude of the act committed, the court stated that the authorities'

function is not, as it seems to me, to go behind *judgments of convictions* and determine with respect to the acts disclosed *by the testimony* the questions of purpose, motive, and knowledge which are often determinative of the moral character of acts. Besides, the testimony is seldom available and to consider it in one case and not in another is to depart from uniformity of treatment. [Emphasis supplied.]

The court in *United States ex rel. Zaffarano* v. *Corsi*, 63 F.2d 757, 758 states:

We have heretofore held that, in determining whether the crime of which an alien stands convicted is one "involving moral turpitude," neither the immigration officials nor the courts sitting in review of their action may go beyond the *record of conviction*. [Citing cases] They must look only to the inherent nature of the crime *or* to the *facts charged in the indictment* upon which the alien was convicted, to find the moral turpitude requisite for deportation for this cause. [Emphasis supplied.]

The court thereafter stated on a petition for rehearing in a per curiam opinion in which it construed prior language in the case of *United States ex rel. Robinson* v. *Day*, 51 F.2d 1022, that the meaning of the wording in the *Robinson* case was to the effect that

\* \* \* neither the immigration officials nor the court reviewing their decision may go *outside the record of conviction* to determine whether in the particular instance the alien's conduct was immoral. And by the record of conviction we mean the charge (indictment), plea, verdict, and sentence. [Emphasis supplied.]

In a recent case arising in the Seventh Circuit and decided on December 13, 1966,[1] the court there considered a petition to review and set aside an order of deportation of the petitioner, Rassano. The petitioner had been convicted of two separate felonies: one in 1934; one in 1952. It was Rassano's argument that he had been denied due process in violation of the Fifth Amendment, because at the deportation hearing he was denied the right to show that his 1934 conviction was illegally obtained. The court stated:

The orderly administration of justice requires that the INS and the reviewing court go no further than the record of conviction (the indictment, plea, verdict and sentence) to determine whether an alien is deportable under 8 U.S.C. § 1251(4) (1964). The claim has no legal basis. *United States ex rel. Zaffarano v. Corsi*, 63 F.2d 757, 759 (2d Cir. 1933) ; cf. *Tseung Chu v. Cornell*, 247 F.2d 929 (9th Cir.), cert. denied, 355 U.S. 892 (1957).

Thus, it would seem that contrary to the majority opinion, the Service position is not in error but is eminently correct. Thus, in the instant case, the Service and we, the Board, have a right to look to the record of conviction which includes the indictment herein and contains four counts which describe acts committed by the respondent certainly involving moral turpitude. To hold otherwise would be a distortion of the rule in *Zaffarano*. This is the guide for ascertaining the function of the administrative ajudicators when the law which is violated does not describe an act which inherently involves moral turpitude. Any other conclusion drawn from *Mylius* or *Zaffarano* is in error.

There is one final point in this case having to do with the knowledge of the respondent required under section 1071. The record shows that the respondent was convicted on all four counts of the indictment "as charged". She was thereafter sentenced to imprisonment for a period of two years, the execution of which sentence was suspended. The respondent was then placed on probation for a period of two years. Referring to section 1071 it can be seen that where the person convicted had notice or knowledge of the fact that a warrant or process had been issued for the person concealed from arrest, the punishment is a fine of not more than $1,000, or imprisonment for not more than one year, or both, except that if the warrant or process issued on a charge of felony, or after conviction of such person of any offense, the punishment shall be a fine of not more than $5,000, or imprisonment for

---

[1] *Lawrence Rassano v. Immigration & Naturalization Service.*

not more than five years, or both. Taking the sentence imposed on respondent in its most favorable light toward her, it must be concluded that the two year sentence imposed after conviction for violation of section 1071, 371 and 4, Title 18, U.S.C., was meant to be concurrent sentences and consequently the court must have found that the respondent had knowledge that the warrant or process issued on the charge of felony or after conviction of such person of any offense.** All of the above coupled with what we have discussed as to the meaning of harboring and concealing together with the other elements of the crime under Section 1071 "as to prevent his discovery or arrest," truly must be dispositive of the moral turpitude aspect of the crime.

In summation, it is my position that the statute with its requisite of knowledge that process or warrant has been issued on a charge of felony or after conviction of the person harbored for any offense and that the person harboring does so to prevent the fugitive's discovery and arrest, does of itself describe a crime involving moral turpitude. Furthermore, assuming arguendo that the statute fails to describe such a crime, then it is my position that under both the *Mylius* and *Zaffarano* cases, *supra*, the Immigration Service can resort to the indictment which in this particular case does, indeed, describe a crime involving moral turpitude.

Marianne B. McConnaughey, Member, Dissenting:

I concur in Mr. Griffin's dissenting opinion.

## BEFORE THE ATTORNEY GENERAL ON REVIEW
(August 30, 1968)

The Board of Immigration Appeals, at the request of the Commissioner of Immigration and Naturalization, has referred this matter to me for review pursuant to 8 CFR 3.1(h)(1)(iii). The Board, by order of December 21, 1966, denied by a vote of 3-2, a motion of the

---

** Section 1071 indeed requires knowledge and guilty knowledge. It requires a physical act of the secreting the body of the fugitive. (See *United States* v. *Shapero*, 113 F.2d 891, 893 (C.A.2d 1940) ; *United States* v. *Thornton*, 178 F. Supp. 42, 43 (D.C. N.Y. 1959). Cf. *Firpo* v. *United States*, 261 Fed. 850, 853 (C.A. 2d 1919), wherein the court described the offense "to conceal" means "to hide, secrete, or keep out of sight. To "harbor" means "to lodge, then care for after secreting the defender." The dissent in the *Firpo* case which disagreed on other grounds, lent weight to the majority opinion's meaning when it referred to the offense as being "some *physical* act tending to the secretion of the body of the defender." Cf. also *Susnjan* v. *United States*, 27 F.2d 223, 224 (C.A. 6th, 1928) ; *United States* v. *Grant*, 55 Fed. 414, 415 (1893) ; *Jones* v. *VanZandt*, 46 U.S. 221 (1847).)

Immigration and Naturalization Service for reconsideration of the Board's order of August 18, 1966, terminating the proceedings.

These proceedings were instituted pursuant to § 241(a)(4) of the Immigration and Nationality Act, 8 U.S.C. 1251(a)(4), which provides that any alien shall be deported who is convicted of a crime involving moral turpitude within five years after entry and is then sentenced to imprisonment for a year or more. The original opinion of the Board held that moral turpitude was not involved because the laws that respondent violated did not inherently require force, an evil intent or a depraved act for a conviction.

One of the crimes of which respondent was convicted was harboring and concealing a person from arrest in violation of 18 U.S.C. 1071. In its original opinion the Board held that a violation of this statute would not be considered by society "as an act of baseness or vileness or depravity in private or social duties which man owes his fellow man or society in general." On reconsideration two members of the Board were of the view that this was a crime that involved moral turpitude.

It is a crime under 18 U.S.C. 1071 for anyone to harbor or conceal any person for whose arrest a warrant or process has been issued under the provisions of any law of the United States, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person.

The applicable definition of moral turpitude, as enunciated in numerous administrative and judicial decisions, includes "anything done contrary to justice" or "an act of baseness * * * in the private and social duties which a man owes to his fellow man, or to society in general." 37 Op. A.G. 293, 294.

In the light of this definition, I find, as did the dissenting members of the Board, that the act of which the respondent was convicted—that is, the active and knowing interference with the enforcement of the laws of the United States in contravention of 18 U.S.C. 1071—involves moral turpitude within the meaning of § 241(a)(4) of the Immigration and Nationality Act.

Accordingly, the decision of the Board which ordered these proceedings terminated is reversed.

Because of my decision on this issue it is unnecessary to consider any of the other grounds suggested for reversal.