UNITED STATES ex rel. MANZELLA v. ZIMMERMAN, District Director of Immigration and Naturalization.

No. M—1204.

District Court, E. D. Pennsylvania.

April 1, 1947.

Sabato Bendiner, of Philadelphia, Pa., for plaintiff.

James P. McCormick, Asst. U. S. Dist. Atty., and Maurice A. Roberts, Immigration and Naturalization Service, both of Philadelphia, Pa., for defendant.

MARIS, Circuit Judge.

The relator is an alien, a native and citizen of Italy, who was lawfully admitted to the United States for permanent residence on September 8, 1922. On April 1, 1935, he was indicted in Lehigh County, Pennsylvania, on charges arising out of a bank robbery which occurred on January 11, 1935. He was not immediately apprehended. On or about August 1, 1935, he went on a picnic from Detroit to an island in the Detroit River on the Canadian side of the international boundary line. He returned to Detroit on the same day. The relator was arrested in August, 1935, upon the indictment pending in Lehigh County, Pennsylvania, and was extradited to that county and placed in the county jail.

On September 20, 1935, he escaped from the Lehigh County jail where he was being detained pending trial on the bank robbery charge but was shortly thereafter recaptured. On September 24, 1935, he was indicted for breaking prison and escaping. On the same day he was arraigned upon both indictments, pleading not guilty to the bank robbery indictment and guilty to the indictment for prison breach. He was tried and convicted on the bank robbery charge and on September 25, 1935 was sentenced upon that charge, and also upon the prison

breach charge, the latter sentence to commence at the expiration of the first one.

On June 16, 1936, a warrant for the arrest of the relator under the immigration laws was issued by the Assistant to the Secretary of Labor. After a hearing before an immigrant inspector the Assistant to the Secretary of Labor found the relator deportable under Section 19 of the Immigration Act of 1917, 8 U.S.C.A. § 155, on the ground that he had been sentenced to imprisonment for a term of one year or more because of conviction of a crime involving moral turpitude committed within five years after his re-entry into the United States from the island in the Detroit River on August 1, 1935. A warrant for his deportation was issued in 1938, execution of which was deferred until his release from state imprisonment. On March 20, 1947, the relator was released from the Eastern State Penitentiary of Pennsylvania on parole and was taken into custody by the respondent for deportation under the warrant previously issued. The relator thereupon sued out the present writ of habeas corpus.

■ The relator asserted in his petition for the writ that his re-entry into the United States from the Canadian island in the Detroit River in 1935 did not constitute an entry within the meaning of the deportation statute. However, he did not press that point at the hearing and it must in any event be decided against him. United States ex rel. Volpe v. Smith, 1933, 289 U. S. 422, 53 S.Ct. 665, 77 L.Ed. 1298; United States ex rel. Santarelli v. Hughes, 3 Cir., 1940, 116 F.2d 613.

The ground upon which the relator now insists that the warrant of deportation issued against him is invalid and that he is, therefore, entitled to be released from custody, is that the crime of prison breach and escape which he committed within five years after his re-entry in 1935, is not a crime involving moral turpitude within the meaning of the Immigration Act. Section 19 of that act, as amended,[1] provides that "any alien who * * * is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, * * * shall, upon the warrant of the Attorney General, be taken into custody and deported."

It follows, as indeed the respondent admits, that if the crime of which the relator was convicted did not involve moral turpitude the warrant of deportation was improperly issued and he is entitled to be discharged. My inquiry, therefore, is whether the crime of which the relator was convicted did involve moral turpitude.

■ It is settled that in determining this question the court is confined to the record and may not consider the particular circumstances under which the crime was committed. The question is whether the inherent nature of the crime as defined by law and particularized in the indictment necessarily involves moral turpitude.[2] Accordingly the relator's allegation that his escape was in fact accomplished without force but merely by walking through an open door is immaterial. I, therefore, turn to the Pennsylvania Act of March 31, 1860, P.L. 382, Section 3, under which the relator was indicted, in order to consider the inherent nature of the crime which it defines. Its relevant provisions are as follows:

"Section 3. If any person arrested and imprisoned, charged with an indictable offence, shall break prison, or escape, or shall break prison, although no escape be actually made, such person shall be guilty of a misdemeanor, and on conviction, be sentenced to undergo an imprisonment, by separate or solitary confinement at labor, not exceeding two years, if the criminal charge on which such person stood committed, was a crime or misdemeanor punishable on conviction, by imprisonment by separate or solitary confinement at labor; or to imprisonment not exceeding one year, if such charge was a crime or misdemeanor punishable on conviction, by simple imprisonment without labor; * * *

---

[1] 8 U.S.C.A. § 155.

[2] United States ex rel. Mylius v. Uhl, 2 Cir., 1914, 210 F. 860; United States ex rel. Griffo v. McCandless, D.C.Pa., 1928, 28 F.2d 287; United States ex rel. Zaffarano v. Corsi, 2 Cir., 1933, 63 F. 2d 757; United States ex rel. Guarino v. Uhl, 2 Cir., 1939, 107 F.2d 399.

It will be observed that the Pennsylvania statute comprehends two distinct acts which it denounces as criminal: breaking prison and escape. Neither prison breach nor escape are defined in the statute and so must be construed in the light of their common law use. 3 Sutherland Statutory Construction, 3rd Ed., § 5303. At common law the crime of escape is committed by a prisoner when he voluntarily departs from lawful custody without breach of prison.[3] It will be seen that this offense involves no element of force or fraud and I am quite clear that commission of the offense does not necessarily involve moral turpitude. Prison breach on the other hand involves breaking out of a place of confinement in addition to mere departure therefrom.[4] Accordingly the use of force is one of the essential elements of the crime.

It is quite clear that in the relator's case the charge which the grand jury intended to make against him by the indictment to which he pleaded guilty involved prison breach as well as escape since the indictment alleged that he did break prison and escape "with force and arms."[5] I must decide, therefore, whether every breaking of prison through the use of force necessarily involves moral turpitude.

While the term "moral turpitude" has been used in the law for centuries it has never been clearly or certainly defined. This is undoubtedly because it refers, not to legal standards, but rather to those changing moral standards of conduct which society has set up for itself through the centuries. The authorities are in agreement, however, that moral turpitude is evidenced by an act of baseness, vileness or depravity in the private and social duties which according to the accepted standards of the time a man owes to his fellowman or to society in general.[6] It has been said that moral turpitude implies something immoral in itself regardless of the fact whether it is punishable by law. The doing of the act itself, and not its prohibition by statute, fixes the moral turpitude.[7]

I agree with those who regard it as most unfortunate that Congress has chosen to base the right of a resident alien to remain in this country upon the application of a phrase so lacking in legal precision and, therefore, so likely to result in a judge applying to the case before him his own personal views as to the mores of the community.[8] The fact remains, however, that Congress has retained the phrase in the statute in spite of all suggestions for its elimination or modification. I, therefore, must apply it to the case before me as best I can.

In considering whether a prison breach accomplished by force involves moral turpitude we must remind ourselves again that it is the inherent nature of the offense under any and all circumstances which we are considering. Aggravated forms of the crime are not controlling. The proper test is to consider whether a prison breach accomplished by the least imaginable force involves moral turpitude. Thus, to cite an extreme example, it was held in a leading English case[9] that while merely climbing over a prison wall to escape is not a prison breach it is otherwise if a loose brick is pushed from the top of the wall. In other words, the case which we must analyze is that of the prisoner who uses the minimum amount of force necessary to escape, for example, by prying open the bars of a window or forcing the lock of a door, but who meets no opposition on the part of his jailers and uses no artifice, threats or other violence, for

---

[3] Clark's Criminal Law, 3rd Ed., p. 438, § 137.

[4] Wharton's Criminal Law, 12th Ed., p. 2337, § 2025.

[5] The words "with force and arms" used in the indictment are words of art at common law and signify merely that force or violence was used. Bouvier's Law Dictionary, (Rawles Third Revision) p. 1255.

[6] In re Henry, 1909, 15 Idaho 755, 99 P. 1054, 21 L.R.A.,N.S., 207; State v. Malusky, 1930, 59 N.D. 501, 230 N.W. 735, 71 A.L.R. 190; Ng Sui Wing v. United States, 7 Cir., 1931, 46 F.2d 755; United States v. Carrollo, D.C.Mo., 1939, 30 F.Supp. 3.

[7] Pippin v. State, 1916, 197 Ala. 613, 73 So. 340, 342.

[8] See Note, 43 Harvard Law Review 117.

[9] Rex v. Haswell, 1821, Russ. & Ry. C.C. 458, 168 Eng.Repr. 896.

such a prison breach would clearly come within the language of the Pennsylvania statute and of the indictment in this case.

Under such circumstances, which, I repeat, are purely hypothetical but none the less well within the purview of the Pennsylvania statute, I cannot say that the action of an escaping prisoner involves that element of baseness, vileness or depravity which has been regarded as necessarily inherent in the concept of moral turpitude. On the contrary such action, while mistaken and wrong under these circumstances, does undoubtedly spring from the basic desire of the human being for liberty of action and freedom from restraint.

 I conclude, therefore, that the crime which the relator committed after his re-entry into the United States, prison breach and escape, was not a crime involving moral turpitude within the meaning of Section 19 of the Immigration Act.

An order will accordingly be entered discharging the relator from custody.