[No. A025109. First Dist., Div. Four. Oct. 30, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
CARL HORACE WALDECKER, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II A and C.

COUNSEL

Catalina Lozano, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye and Stan M. Helfman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SABRAW, J.—Defendant Carl Waldecker appeals from a judgment of conviction of first degree burglary (Pen. Code, § 459) and attempted robbery (Pen. Code, § 459) following a trial by jury. We first hold that the preliminary hearing testimony of the victim was properly admitted at trial. Based upon the Supreme Court's recent decision in *People* v. *Collins* (1986) 42 Cal.3d 378 [228 Cal.Rptr. 899, 722 P.2d 173], we next hold that the judgment must be reversed and the matter must be remanded for further proceedings because of *Castro* error. Finally, we hold that defendant's sentence was improperly enhanced pursuant to Penal Code section 667.5.

## I. THE FACTS AND PROCEDURE

The 71-year-old victim, Anthony Hampton, lived in the same apartment complex as defendant's mother. It was common knowledge in the complex that Hampton received checks from the Veterans Administration and from

the Social Security Administration on the first and third days of each month, that he routinely cashed the checks, and that he kept the funds in his wallet.

At the time the crimes were committed, Hampton had known defendant for years. At approximately 9 p.m. on August 8, 1982, several hours after Hampton loaned defendant $25 to purchase a present for defendant's mother, defendant threw a brick through the window of Hampton's apartment and broke in demanding Hampton's cash. Hampton was beaten by defendant who was scared away when neighbors heard the commotion and came to the rescue. When neighbors arrived, Hampton was sitting on the edge of his bed with "quite a bit" of blood on his face; he appeared shaken and was "complaining of his chest." He was treated at the emergency room of a hospital and released.

Defendant was charged with first degree burglary (Pen. Code, § 459) and aggravated assault (Pen. Code, § 245, subd. (a)(1).) The information also alleged that defendant had five felony convictions.[1] At the time of the preliminary hearing (two weeks after the attack) Hampton was hospitalized for heart problems. As a result, the prosecutor arranged for him to be transported to court by ambulance. Hampton testified concerning the circumstances of the attack and identified defendant as the perpetrator. Although defendant's counsel cross-examined Hampton at length concerning the circumstances of the attack, he did not challenge Hampton's competence to testify.

By the time of trial, Mr. Hampton had died. As a result, the People moved to introduce his preliminary hearing testimony. Defendant objected on the ground that Hampton had not been competent when he testified at the preliminary hearing, thereby depriving defendant of his right to cross-examination. The court reviewed the preliminary hearing transcript, heard testimony from the deputy district attorney who had conducted the People's case at the preliminary hearing, and reviewed Hampton's hospital records. Although there was considerable evidence that Hampton was incoherent and disoriented during the initial portions of his hospitalization (perhaps due to withdrawal from his alcohol dependence), there was also substantial evidence in the record concerning later periods (near the time Hampton testified) when he was alert and in control of his mental faculties. In view of that evidence, the court overruled defendant's motion.

---

[1] Only prior convictions three and four are directly relevant to the issues before us. Prior three was a 1971 burglary conviction and prior four was a 1974 conviction for receiving stolen property.

The court summarily denied defendant's motion to exclude use of his prior convictions for impeachment purposes (*People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]) based on its interpretation of Proposition 8. Defendant then admitted the priors alleged in the information. At the People's request, the charge of aggravated assault was dismissed.

Anthony Hampton's testimony was read to the jury at trial. When the jury was unable to agree upon a verdict, a mistrial was declared.

Prior to the commencement of the retrial, the court denied defendant's renewed *Beagle* motion as a matter of law based on Proposition 8. Defendant then admitted the priors for the purposes of trial, reserving his right to later object regarding the significance of the priors for sentencing purposes in the event of a conviction.

Defendant preserved his previous objection to the reading of Anthony Hampton's preliminary hearing testimony, but did not request the court to independently reassess the issue. By agreement, the court simply followed the ruling from the first trial. Three percipient witnesses testified regarding the circumstances of the attack (Doreen Johnson, Glen King and James Burgess). Hampton's preliminary hearing testimony was read to the jury. Defendant did not testify. The jury found him guilty of first degree burglary and attempted robbery.

Defendant was sentenced to the upper term of six years on the burglary conviction and to eighteen months on the robbery conviction. Sentence was stayed on the robbery charge pursuant to Penal Code section 654. Defendant's sentence was enhanced by one year (consecutive) for his 1966 burglary conviction, by one year (consecutive) for his 1971 burglary conviction (prior three), and by one year (consecutive) for his 1974 receiving stolen property conviction (prior four), resulting in a total sentence of nine years.

Defendant filed a timely notice of appeal.

## II. ANALYSIS

**A***

· · · · · · · · · · · · · · · · · · · ·

* See footnote, *ante* page 1152.

**B. The Trial Court Erred in Failing to Exercise Its Discretion in Ruling on Defendant's *Beagle* Motion.**

 Defendant correctly contends that the trial court erred when it failed to exercise its discretion in denying his motion to exclude his prior convictions. (*People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111].) The People respond that, having failed to testify at trial, defendant has no standing to challenge the court's ruling on appeal, citing *Luce* v. *United States* (1984) 469 U.S. 38, 43 [83 L.Ed.2d 443, 448, 105 S.Ct. 460]. However, after this case was briefed, the California Supreme Court adopted the *Luce* rule prospectively only. (*People* v. *Collins, supra,* 42 Cal.3d 378, 388-389.) For pre-*Collins* cases, the Supreme Court set forth a detailed procedure for appellate courts to follow in assessing claimed *Castro* error.

The first step in the analytical process is for us to determine whether the prior convictions are "(1) admissible or excludable in the trial court's discretion or (2) inadmissible as a matter of law." (*People* v. *Collins, supra,* 42 Cal.3d 378, 389.) In the information filed in this case, it was alleged that defendant had prior felony convictions of: (1) second degree burglary; (2) escape from custody; (3) first degree burglary; (4) receiving stolen property; and (5) petty theft after a prior conviction of petty theft (Pen. Code, § 666). The burglary, petty theft and receiving stolen property convictions necessarily involved moral turpitude for impeachment purposes. (42 Cal.3d at p. 397 [burglary]; *People* v. *Castro, supra,* 38 Cal.3d 301, 313-315 [larceny]; *People* v. *Rodriquez* (1986) 177 Cal.App.3d 174, 179-180 [222 Cal.Rptr. 809] [receiving stolen property].) The trial court, therefore, had discretion to determine whether or not each of these priors could be used for impeachment and erred in failing to exercise that discretion. (*People* v. *Castro, supra,* 38 Cal.3d 301.)

 The prior conviction for escape presents a more difficult issue. The parties agree that the conviction was for violation of Penal Code section 4532, subdivision (b), escape without force. The question left, therefore, is whether or not such a prior constitutes a crime involving moral turpitude. We hold that it does.

We note initially that Division Two of this court recently reached a contrary conclusion. (*People* v. *Rodgers* (1987) 194 Cal.App.3d 1349 [240 Cal.Rptr. 258].)* In *Rodgers,* the appellate court followed the suggestion in *Castro* that federal immigration cases could be consulted for guidance on whether a particular crime involves moral turpitude. It did not conduct its own independent analysis of the issue and, instead, relied upon *United States* v. *Zimmerman* (E.D.Pa. 1947) 71 F.Supp. 534. In that case, the court

---

*Reporters Note: Opinion ordered not to be reported by Supreme Court Order dated January 21, 1988.

concluded that escape without violence did not involve moral turpitude because it does not involve any element of "baseness, vileness or depravity which has been regarded as necessarily inherent in the concept of moral turpitude." (*Id.* at p. 538.) The *Zimmerman* court went on to observe that although escape without violence is wrong, such action "undoubtedly spring[s] from the basic desire of the human being for liberty of action and freedom from restraint." (*Ibid.*)

With all due respect to the observations of the *Zimmerman* court, we are unpersuaded by that court's rationale. Indeed, that rationale could be used to justify the conclusion that a defendant's perjury does not involve moral turpitude because a defendant who commits perjury to avoid conviction can be said to be motivated by the basic human desire to be free. In our view, consideration of the principle applied in *Castro* and *Collins* persuades us that escape without violence is a crime involving moral turpitude.

The *Castro* court defined moral turpitude as "readiness to do evil," or "moral depravity of any kind," "even if the immoral trait is one other than dishonesty." (*People* v. *Castro, supra,* 38 Cal.3d 301, 306, 314-316.) Applying those principles, the *Castro* court held that simple possession of heroin does not necessarily involve moral turpitude, but possession of heroin for sale does. The rationale for this distinction is that one who possesses the drug for sale does so with an intent to harm others, evidencing the "intent to corrupt others." (*Id.* at p. 317.)

In *Collins,* the court held that burglary involves a readiness to do evil because it is a "fundamentally deceitful act" of entering a house or other structure with the intent to steal or commit another serious crime inside. (*People* v. *Collins, supra,* 42 Cal.3d 378, 396.) Furthermore, commission of burglary expresses an intent to harm others. As one court has explained: "Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety." (*People* v. *Gauze* (1975) 15 Cal.3d 709, 715 [125 Cal.Rptr. 773, 542 P.2d 1365].)

The crime of escape was succinctly analyzed in an early Court of Appeal decision. The description is particularly apposite in the present context.

"One of the dominant essentials of a properly managed prison, whether a state, county or city, involves rules of discipline whereby the behavior of prisoners confined therein is regulated and controlled. Naturally, there is always a strong temptation in the breast of every person confined within the walls of a prison as a prisoner to regain his liberty, to which he is not legally entitled until he has paid in full the penalty which the law has annexed to the criminal act for which he is being imprisoned. The escape or attempt to escape by a prisoner, whether from a local jail or a state prison, tends to the general disruption of the prison discipline, and, as often such conduct by prisoners has caused, may be the cause of the slaying or serious wounding of officers or guards of the prison from which the escape or attempt to escape is made. Hence, such an act by persons legally confined in prisons or jails before their terms of imprisonment have expired is justly regarded as among the most flagrant violations of the rules governing prison discipline." (*In re Haines* (1924) 68 Cal.App. 522, 526-527 [229 P. 984].)

The considerations mentioned by the *Collins* court in assessing the status of burglary are similar in the case of nonviolent escape. Escape without violence is an act that involves either deceit or stealth. Prison guards do not allow inmates to depart unless forced or deceived into doing so. The potential for violence resulting from an escape is obvious. Prison guards have a duty to thwart escaping convicts. Law enforcement officers have a similar duty to apprehend escaped convicts. They are authorized to use force in exercising that responsibility. A defendant who was willing to expose himself and others to the potential for physical harm, to employ stealth, or to violate a trust in order to effectuate an escape may be equally motivated and prepared to violate a testimonial oath in order to escape conviction. As with burglary, the act of escape is no less turpid because it is accomplished by deceit rather than by force. (*People* v. *Collins, supra,* 42 Cal.3d 378, 395, fn. 23.)

In conclusion, we hold that a prior conviction of escape without violence necessarily involves moral turpitude. It follows that a jury may properly be allowed to know that a testifying defendant has such a conviction for purposes of evaluating credibility. Thus, the trial court had discretion to determine whether defendant's prior escape conviction should have been admitted for impeachment purposes and erred in failing to exercise that discretion.

In a case involving *Castro* error, *Collins* specifies that different procedures are to be followed depending on whether or not the defendant testified. Here, defendant did not testify. Accordingly, we must reverse and remand

to permit the trial court to apply the analysis mandated in *Collins* for such a situation.

C.*

. . . . . . . . . . . . . . . . . . .

### III. CONCLUSION

The judgment is reversed with the following directions: (1) The trial court shall direct defendant to make an offer of proof regarding what his testimony would have been if he had taken the stand (*People* v. *Collins, supra,* 42 Cal.3d 378, 393);

(2) Because this case was tried before *Castro* was decided (*id.* at pp. 393-399), the court shall hear the offer of proof at an in camera review and seal the record for later appellate review, if necessary [if the prosecutor stipulates in writing that, if the judgment is vacated by the trial court or reversed by an appellate court, the case will be dismissed with prejudice, the prosecutor may be present at the hearing] (*id.* at p. 394);

(3) The court shall rule in open court whether it would have excluded any of the priors (without disclosing to the prosecution the context of defendant's offer of proof) (*id.* at p. 394, fn. 20);

(4) If the court determines that it would have admitted the priors alleged against defendant, it should then find that the *Castro* error was harmless and reinstate the judgment (*id.* at p. 394);

(5) If the court determines that it would have excluded one or more of the priors, the court should weigh the prejudice under the standard of *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] (*Collins,* at p. 394); if the court finds no prejudice, it should reinstate the judgment (*id.* at pp. 394-395); if the court finds prejudice, it should order a new trial (*id.* at p. 395);

(6) Finally, the sentence then imposed cannot be enhanced separately for both prior convictions three and four, only one enhancement for those two convictions can be imposed.

Channell, J., concurred.

---

*See footnote, *ante,* page 1152.

**POCHÉ, Acting P. J.**—I concur in the judgment and in all of the reasoning of the lead opinion except that which classifies the crime of escape as defined in Penal Code section 4532, subdivision (b) as a crime whose least adjudicated elements involve moral turpitude. I see no need to create a conflict with the well-reasoned unanimous decision of *People* v. *Rodgers* (1987) 194 Cal.App.3d 1349, 1353-1354 [240 Cal.Rptr. 258].

A petition for a rehearing was denied November 25, 1987. Poché, J., was or the opinion that the petition should be granted. Appellant's petition for review by the Supreme Court was denied January 21, 1988.