[No. D015893. Fourth Dist., Div. One. Apr. 26, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES WAYNE JOHNSON, Defendant and Appellant.

**COUNSEL**

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Holly D. Wilkens and John T. Swan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

NARES, J.—Appellant Charles Wayne Johnson (Johnson) appeals from his conviction by jury in count 1 of second degree murder with personal use of a deadly weapon, in count 2 (on the same facts) of vehicular manslaughter with gross negligence, and in count 3 of unlawful taking and driving a vehicle. Johnson thereafter admitted two prior felony convictions and a prison term. Counsel on appeal challenges the conviction of second degree murder, asserts admission of the priors was invalid, and rulings on evidence and a jury instruction were error. Johnson personally argues fact-specific errors in various proceedings leading to his convictions. We affirm the judgment of guilt, reverse the judgment on the prior conviction allegations, and remand for further proceedings.

### FACTS

There is essentially no dispute about the facts of the offenses. On the evening of June 13, 1991, Muasafumi Morita parked his red 1989 Mitsubishi pickup in a parking lot at his Mission Valley residence. About four o'clock the next morning, San Diego Police Officers Heacox and Godinez were on patrol near Imperial Avenue and Frances Street when Heacox saw a red pickup parked on Francis Street with the front end of the truck protruding into the street.

Heacox saw Johnson enter the pickup and drive north a short way before making a U-turn to head south. As Heacox drove by, he saw Johnson appear to reach under the dash and then lift his right arm up. Godinez said, "He's got a screwdriver." Heacox knew that this was a common form of key for vehicle thieves. He then also made a U-turn, and began following Johnson south in the pickup. Johnson drove through a stop sign and Heacox turned on his overhead lights and attempted to stop the pickup.

Johnson had previously received a traffic ticket for having run a stop sign at the same intersection. He had also been advised by his parole officer that if he were found in a stolen vehicle his parole officer would recommend he be returned to prison. Johnson had also in November 1984 fled from a La Mesa police officer by driving the wrong way on surface streets, after which he fled on foot from a stopped vehicle.

Johnson determined to repeat his wrong-way driving tactic to elude the following police. Sadly, he chose to do so this time on Interstate 15 (I-15). He drove up a southbound on-ramp to I-15, and then executed a hard *left* turn and headed north in the southbound lanes at about 45 miles per hour, the police car following with overhead lights flashing.

Two or three cars heading south passed the northbound wrong-way convoy. Johnson then drove down the on-ramp from Market Street, while the officers following him activated the siren. Johnson made a right turn on Market, and then drove back *up* the I-15 exit ramp, heading southbound into oncoming northbound traffic. Johnson accelerated to about 60 miles per hour and drove head-on into a pickup truck traveling the proper direction on the freeway. The driver, Robert Dalton, (the father of 12 children) died at the scene from massive blunt force trauma. Johnson was on the floor of the stolen truck. The truck ignition had been removed, and a bag of tools found in the truck with Johnson did not belong to Morita.

### *Defense*

Johnson did not testify. The defense consisted largely of suggesting that the officers may have been confused about their direction of travel on the freeway, and that Johnson himself (despite having grown up in the neighborhood) may have acted out of confusion rather than intention, which thus would negate his having demonstrated a wanton disregard for the safety of others.

### DISCUSSION

### I.  *The Conviction of Second Degree Murder Was Proper*

#### A.  *Inherently Dangerous Felony*

██ Counsel for Johnson maintains the conviction of second degree murder cannot stand because violation of Vehicle Code section 2800.2 (viewed in the abstract) is not inherently dangerous, or "an offense carrying 'a high probability' that death will result." (*People* v. *Patterson* (1989) 49 Cal.3d 615, 627 [262 Cal.Rptr. 195, 778 P.2d 549].) He is wrong.

The offense is committed by one who "flees or attempts to elude a peace officer" while driving his pursued vehicle "in a *willful or wanton disregard for the safety of persons or property*" (Veh. Code, § 2800.2, italics added). It would seem clear as a matter of logic that any felony whose key element is "wanton disregard" for human life necessarily falls within the scope of "inherently dangerous" felonies.

Counsel for Johnson, however, relies upon the statute's terms which encompass "disregard for the safety of persons *or property*." His argument is that disregard for property may not constitute an "inherently dangerous" felony. While the point has a superficial plausibility, we cannot agree.

To begin with, giving the statutory language involving "wanton disregard" for the safety of "persons or property" a commonsense construction, it appears the "wanton disregard" in question is total, rather than selective. That is, the disregard is for everything, whether living or inanimate.

As the Attorney General also points out, apart from the "wanton disregard" element, one must also be engaged in the act of fleeing from a pursuing peace officer whose vehicle is displaying lights and sirens. Any high-speed pursuit is inherently dangerous to the lives of the pursuing police officers. In even the most ethereal of abstractions, it is not possible to imagine that the "wanton disregard" of the person fleeing does not encompass disregard for the safety of the pursuing officers. In short, it does not appear that the phrase "or property" may properly be construed to limit the mental state of the offender, and thus to make fleeing a pursuing police vehicle other than "inherently dangerous."

We have come to similar conclusions in other cases. In *People* v. *Pearch* (1991) 229 Cal.App.3d 1282, 1297-1299 [280 Cal.Rptr. 584] we held kidnapping to be such an "inherently dangerous felony" as would support a conviction of second degree felony murder. There, we stated that kidnapping is "fraught with violence—either the actual use of physical force or the threat of physical harm." (*Id.* at p. 1297.)

*Pearch* referred to the "threat of physical harm." While a kidnapping presents a *threat* of such harm to the victim, fleeing from police in wanton disregard of others carries with it as a likely consequence the possibility of massive physical harm, albeit to an as-yet unidentified victim. Like discharging a firearm at random in a crowd, an evasion of arrest by use of a vehicle in wanton disregard for others is "fraught with violence." The felony committed by Johnson was inherently dangerous.

### B. *Asserted Ireland Error*

Counsel next asserts the conviction of second degree murder may not stand as it was based on a felony which is an integral part of the homicide, in violation of the rule set out in *People* v. *Ireland* (1969) 70 Cal.2d 522, 539 [75 Cal.Rptr. 188, 450 P.2d 580]. The rule has, however, no application to this case.

Stated another way, the *Ireland* principle "bars the application of the felony murder rule 'where the purpose of the conduct was the very assault which resulted in death.' " (*People* v. *Smith* (1984) 35 Cal.3d 798, 806 [201 Cal.Rptr. 311, 678 P.2d 886], quoting *People* v. *Burton* (1971) 6 Cal.3d 375, 387 [99 Cal.Rptr. 1, 491 P.2d 793].) *Smith* held the underlying felony must have a purpose other than the assault for the felony-murder rule to apply. (*Id.* at pp. 806-808.) It is clear that Johnson's intent was "to elude a pursuing peace officer" (Veh. Code, § 2800.1) rather than to commit an assault upon any person.

The fact that in attempting to elude police Johnson drove with "willful or wanton disregard for the safety of persons" (Veh. Code, § 2800.2) does not mean that the death he caused by his inherently dangerous conduct was somehow his purpose. This is a type of case in which application of the felony-murder rule may be expected to possibly serve as a deterrent to such conduct, and thus the rule may here serve a rational purpose. (*People* v. *Mattison* (1971) 4 Cal.3d 177, 185 [93 Cal.Rptr. 185, 481 P.2d 193]. See also *People* v. *Burton, supra,* 6 Cal.3d at p. 387.)

## C. *Specific Versus General Statute*

■    In his last challenge to the legal propriety of the conviction for murder, counsel argues that Vehicle Code section 2800.3[1] is a special statute governing punishment for the offense, which prohibits his prosecution under the more general murder statute. The point is not well taken.

Our Supreme Court discussed this question in a case where it was asserted the vehicular manslaughter statute precluded a murder prosecution such as this one. The court stated that the following analysis applies to this question:

"[The] preemption rule is applicable (1) when each element of the general statute corresponds to an element on the face of the special statute, or (2) when it appears from the statutory context that a violation of the special statute will necessarily or commonly result in a violation of the general statute. [Citation.] Neither of these two categories applies here. A prosecution for murder under section 187 requires a finding of *malice*, while section 192 specifically defines manslaughter as a killing *without malice*. Moreover,

---

[1]That section provides: "Whenever willful flight or attempt to elude a pursuing peace officer *in violation of Section 2800.1* proximately causes *death or serious bodily injury* to any person, the person driving the pursued vehicle, upon conviction, shall be punished by imprisonment in the state prison for two, three, or four years, or by imprisonment in the county jail for not more than one year, or by a fine of not less than one thousand dollars ($1,000) nor more than ten thousand dollars ($10,000), or by both that fine and imprisonment." (Italics added.)

in light of the malice requirement, a violation of the vehicular manslaughter statute would not necessarily or commonly result in a violation of the general murder statute." (*People* v. *Watson* (1981) 30 Cal.3d 290, 295-296 [179 Cal.Rptr. 43, 637 P.2d 279], italics in original.)

In a similar vein, the element of malice is absent from the "special" statute in this case, but remains a requisite for application of the "general" statute, thus rendering preemption inappropriate for the reasons stated in *Watson*.

In this case there is also an even more fundamental reason why the provisions of Vehicle Code section 2800.3 do not and indeed logically cannot preempt Penal Code section 187. The former statute punishes those who inflict "death *or* serious bodily injury," while a murder prosecution, of course, requires death, and nothing less. Thus a violation of the Vehicle Code statute "would not necessarily or commonly result in a violation of the general murder statute. Thus the [preemption] rule is inapplicable." (*People* v. *Watson, supra*, 30 Cal.3d at p. 296.) That holding applies here also.

## II.   *Other Crimes Evidence*

■   Counsel argues evidence of two prior driving violations and the fact Johnson was on parole was improperly admitted. He focuses on the claim that Johnson's "intent to evade the police was never at issue." Even if this were true, it is not dispositive of the question, because the crucial point is whether Johnson drove in "wanton disregard for the safety of persons" such as his victim, Robert Dalton.

As counsel effectively concedes, Johnson's intent in this regard was very much at issue, with the thrust of his defense being that he might merely have been confused in his wrong-way freeway pursuit escapes. Evidence that he had on another occasion utilized wrong-way driving as an evasion tactic was evidence of a highly material fact, and it was also most probative of that fact. With both materiality and probative value established, the remaining question is only whether public policy requires exclusion of such relevant evidence. (*People* v. *Gordon* (1990) 50 Cal.3d 1223, 1239 [270 Cal.Rptr. 451, 792 P.2d 251].)

It does not. The offered evidence did not purport to show Johnson had a bad character, but that when attempting to flee police he was willing to drive the wrong way on the freeway as he had on surface streets. (*People* v. *Robbins* (1988) 45 Cal.3d 867, 879 [248 Cal.Rptr. 172, 755 P.2d 355].) Similarly, the evidence of his previous stop sign violation at the same intersection where the pursuit began is some evidence of his exhibition of a

disregard for traffic rules with which he was familiar, and it tends to rebut Johnson's own suggestion his actions were a result of confusion, rather than intention. Finally, the evidence of his parole officer's advice to him was highly probative of motive, that is, Johnson over and above even other car thieves had a peculiar reason to wish to avoid arrest while operating a stolen vehicle. Admission of this evidence was properly within the trial court's discretion.

### III. *Instruction on Flight*

Counsel next asserts it was error to have instructed on flight (CALJIC No. 2.52) because it "had no application to the offense charged in Counts I and II" (murder and vehicular manslaughter) while "the question of flight may have been appropriate" as to count 3 (vehicle theft). Because the jury was told to consider only such instructions as it found applicable (CALJIC No. 17.31), and by its terms the instruction here (flight after commission of crime) could only apply to the vehicle theft charge, instructing the jury on flight was proper. (*People* v. *Turner* (1990) 50 Cal.3d 668, 694 [268 Cal.Rptr. 706, 789 P.2d 887].)

### IV. *Admission of Priors/Sentencing Error*

█ Counsel next argues Johnson's admission of prior felony convictions was defective. "[E]xplicit admonitions and waivers [of the right to jury trial and confrontation and of the privilege against self-incrimination] are still required in this state." (*People* v. *Howard* (1992) 1 Cal.4th 1132, 1179 [5 Cal.Rptr.2d 268, 824 P.2d 1315].) The People argue the admissions should be upheld if "considering the totality of the relevant circumstances, we conclude that defendant's admission of the prior conviction was voluntary and intelligent." (*Id.* at p. 1180.)

Howard, however, was advised of and expressly waived his rights to jury trial and confrontation, but made no express waiver of his privilege against self-incrimination. (*People* v. *Howard, supra,* 1 Cal.4th at pp. 1179-1180.) In this case, the trial judge simply recited the prior convictions with no advisements whatsoever,[2] and then asked Johnson, "Do you admit those prior convictions?" When Johnson became confused, the trial judge then said, "All I want to know is whether you were convicted or whether or not you want a jury trial; were you convicted?" Johnson then admitted that he had been convicted of the prior offenses.

---

[2]The court had been about to excuse the jury before the prosecutor reminded it the proceedings had been bifurcated and trial of the priors was still necessary. The jury was then sent out to wait in the hallway during the proceedings on the priors. (See fn. 3, *post.*)

In this case, as distinct from *Howard,* it is not possible to find Johnson's admissions of guilt "voluntary and intelligent under the totality of the circumstances." (*People* v. *Howard, supra,* 1 Cal.4th at p. 1175.) We have no doubt that Johnson was in fact aware of his right to a jury trial, his right to confront witnesses, and his right to remain silent, all of which he had just exercised in trial. What is impossible to determine from this silent record is whether Johnson not only was aware of these rights, but was also prepared to waive them as a condition to admitting his prior offenses. The state of the record here leaves us no alternative but to reverse the true findings on Johnson's prior offenses and prison term, and to remand for a new proceeding to determine the validity of these allegations.[3]

## V.  *Johnson's Arguments*

Johnson makes several fact-specific challenges to the proceedings which took place at various times, including an assertedly illegal arraignment, conflict with his counsel, ineffective assistance of counsel, violation of his Fifth Amendment rights, and judicial misconduct at sentencing.

Johnson was arraigned at the hospital where he was recovering from his injuries. He asserts he could not have properly have entered a plea of not guilty because he was under medication. We are unable to see what prejudice could have been caused even assuming the truth of that assertion, as Johnson has subsequently had a fair and full trial.

Johnson's two arguments concerning trial counsel are that (1) counsel openly declared a belief in his guilt, and (2) was thereby ineffective. The record does not support the assertions Johnson makes about his attorney's having made statements indicating a belief in his guilt. Nothing else has been shown amounting to ineffective assistance.

Johnson's claimed "Fifth Amendment" violation appears to be premised on his observation that while he elected not to testify, evidence of his former acts was introduced at trial through other witnesses. For reasons earlier set out, this claim is not well taken, and the other-crimes evidence was properly received (see pt. II, *ante*).

---

[3]Counsel also urges that double jeopardy principles prohibit his retrial on these matters. He is wrong. In this case the jury was not discharged until *after* Johnson made his (invalid) admission of guilt as to the prior offense and prison term allegations. The cases cited for the proposition retrial is barred all involved discharge of a jury *before* the admissions were made, and are thus inapposite.

Finally, counsel also points out in a footnote that the concurrent sentence for vehicular manslaughter, which conviction was on the same facts as the murder, is improper. As the Attorney General concedes, the abstract of judgment must be modified to reflect a stay of sentence on count 2 under Penal Code section 654, no matter what the outcome of Johnson's retrial on the allegations of prior offenses. We so order.

Last, Johnson claims the sentencing judge clearly and plainly stated, "Mr. Johnson, I'm now giving you twenty years to life because you are Black." As with other assertions now made by Johnson, the claim is wholly without any support in the record of the proceedings which is before us. That record, of course, contains nothing lending any credence to Johnson's attempt to assert racial prejudice at sentencing.

The heart of Johnson's contentions is his claimed loss of memory about the pursuit/collision renders his conviction improper, and he suffers from physical injury, undue stress, and family hardship. All of these matters, however, are the result of Johnson's own actions, and pale in significance alongside the results of Johnson's conduct, which culminated in his murder of Robert Dalton. Johnson was properly convicted of this crime on the evidence received at trial.

### DISPOSITION

The judgment is affirmed as to the convictions of second degree murder and vehicular manslaughter. The judgment finding true Johnson's admission of the alleged prior convictions and prison term is reversed, and the matter remanded for new proceedings to determine the validity of these matters. If new true findings are made the sentence previously pronounced shall be reimposed with the modification set out below. If contrary findings are made Johnson shall be resentenced in accord with the new determination. In either event the abstract of judgment is directed to be modified to order imposition of the sentence on count 2 stayed pursuant to Penal Code section 654.

Todd, Acting P. J., and Benke, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 12, 1993.