Filed 11/13/13  P. v. Marin CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SILVESTRE CANO MARIN,<br><br>    Defendant and Appellant. | B242432<br><br>(Los Angeles County<br>Super. Ct. No. MA054709) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Murphy, Commissioner.  Affirmed in part, reversed in part, and remanded.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Stacy S. Schwartz, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted defendant Silvestre Cano Marin of one count of driving under the influence of alcohol or drugs (Veh. Code, § 23152, subd. (a)) (count 1, a felony), two counts of hit and run driving (Veh. Code, § 20002, subd. (a)) (counts 2 & 3, misdemeanors), and one count of vandalism causing damage under $400 (Pen. Code, § 594, subd. (a)) (count 4, a misdemeanor). As to count 1, it was alleged that defendant had previously been convicted of a violation of Penal Code section 192, subdivision (c)(1), vehicular manslaughter, which is a sentencing enhancement pursuant to Vehicle Code sections 23550 and 23550.5 and the "Three Strikes" law (Pen. Code, §§ 1170.12, subds. (a)-(d) & 667, subds. (b)-(i)). It was further alleged that defendant served a prior prison term pursuant to Penal Code section 667.5, subdivision (b) for a conviction of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)). Prior to trial, defendant admitted his prior convictions. Accordingly, after the jury rendered its verdict he was sentenced to state prison for a term of seven years, consisting of the upper term of three years on count 1, doubled pursuant to the Three Strikes law; six months to run concurrently on count 2; six months to run concurrently on count 4; and a one-year consecutive term for the prior prison conviction. A six-month term on count 3 was stayed pursuant to Penal Code section 654.

Defendant argues on appeal that his admissions to the prior convictions must be reversed because the court accepted his admissions without advising him of his constitutional rights to confrontation of witnesses and privilege against self-incrimination, or securing his waiver of those rights. Defendant contends that the record fails to demonstrate that the admissions were intelligent and voluntary, and therefore the findings on the prior conviction allegations must be reversed. As we shall explain, we agree.

In addition, we have reviewed at defendant's request the sealed transcript of the trial court proceedings on his *Pitchess*[1] motion to determine whether the trial court failed to provide him with all discoverable information. We find no error in the trial court's handling of those proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

During the evening of November 25, 2011, defendant was driving a white sedan and collided with a sport utility vehicle parked along a curb, causing the SUV to ram into a minivan parked in front of it. All three vehicles were severely damaged. When the owner of the SUV approached defendant, defendant began walking unsteadily away and then began running slowly, zigzagging as he ran. Shortly thereafter, the owner of the minivan and the SUV owner stopped defendant and held him on the ground until police arrived. Defendant smelled strongly of alcohol and his speech was slurred. When police arrived and questioned him, defendant refused to answer many of their questions, and refused to submit to a field sobriety test or breath alcohol test. The police briefly left defendant alone in a police car and he kicked out the back window. At the police station, defendant refused to submit to either a breath test or a blood alcohol test.

Defendant waived his right to a jury trial on the prior prison term and prior strike allegations. He admitted both prior convictions, including a 2005 conviction for gross vehicular manslaughter (Pen. Code, § 192, subd. (c)(1)), and a 2008 conviction for possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)), for which he had served a prior prison term and had not remained free from custody or the commission of a felony for the five years following his release from prison.

Specifically, in taking defendant's admissions the court said to defendant, "With regard to that prior conviction, in the event of a conviction in this case you have a right to have a jury determine whether the conviction is a valid conviction. I make a determination based on documents the DA gives me whether or not you're the person

---

[1]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

3

who is convicted, the jury then makes a decision of whether there is, in fact, a conviction based on documents submitted to the jury by the DA. If you admit that prior conviction, that will be the end of that issue and you will be giving up your right to have a jury trial. And if I were to accept the admission, then the conviction, then it comes into play if there is an acquittal. [*Sic*.] It basically has no effect. Do you understand?" Defendant and his counsel conferred off the record. The court asked defendant if he had been given adequate time to confer with his counsel regarding the prior conviction. Defendant replied, "Yes, I understand, Your Honor. It's just making sure." Defense counsel told defendant, "Just answer his questions."

The court said, "Do you understand you have a right to have a jury trial on the issue of the validity of the prior, correct?" Defendant replied, "Yes, sir." The court continued, "Now, are we willing or do you want to give that right up and admit the truth of the prior conviction?" Defendant answered yes, and defense counsel joined. The court said, "All right. The court accepts the admission."

Defense counsel then said, "Your Honor, it's also being alleged that he has a 667.5 prior, which is part of the information.[2] And he would admit that at this time as well and then the defense request would be just there would be no reference to any of the priors alleged on the information in front of the jury." The court said, "So if you admit that it's the same situation, you do have a right to a trial on that issue as well." Defense counsel said, "Same thing." The court continued: "You can exercise that right or give that right up and admit the prior conviction." Defendant said, "Yes," and the court asked, "You admit it?" Defendant replied in the affirmative, and the court asked, "Give up your right to a jury trial on the prior conviction?" Defendant again replied in the affirmative.

The court clarified that the prior prison term being referred to was a February 2008 conviction for violation of section 11377, subdivision (a) of the Health and Safety Code (possession of a controlled substance). "I just want you to understand correctly. You

---

**2**  The information included defendant's prior conviction for gross vehicular manslaughter as an allegation under count 1 (driving under the influence of alcohol) as a prior strike, and also as a component of other allegations.

4

understand you have a right to a jury trial on the issue of whether it is a valid conviction, correct?" Defendant said yes, and that he was giving up that right and admitting the conviction. Defense counsel joined.

Thereafter, a jury was impaneled and convicted defendant on all counts.

Defendant did not testify or present any evidence.

This timely appeal followed.

## DISCUSSION

### I. Advisement of Constitutional Rights Prior to Defendant Admitting Prior Convictions

Defendant contends that because the true findings by the court on the allegations of his prior convictions and prior prison term were based solely on his admissions, and because the record fails to demonstrate that the admissions were intelligent and voluntary, the findings on the prior conviction allegations must be reversed. We agree.

"[A]n accused must be advised of (1) specific constitutional protections waived by an admission of the truth of an allegation of prior felony convictions, and (2) those penalties and other sanctions imposed as a consequence of a finding of the truth of the allegation." (*In re Yurko* (1974) 10 Cal.3d 857, 860 (*Yurko*).) The federal constitutional rights involved are the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers. (*In re Tahl* (1969) 1 Cal.3d 122, 132 (*Tahl*).) In *Yurko*, *supra*, 10 Cal.3d at page 863, the Supreme Court extended the *Tahl* requirements of express admonitions and waivers to the admission of a prior conviction for sentencing purposes. (See *People v. Howard* (1992) 1 Cal.4th 1132, 1177 (*Howard*).)

However, in *Howard*, our Supreme Court clarified that "the overwhelming weight of authority no longer supports the proposition that the federal Constitution requires reversal when the trial court has failed to give explicit admonitions on each of the so-

5

called *Boykin*[3] rights." (1 Cal.4th at p. 1175.) The Court therefore adopted the less rigid federal approach to determining whether a guilty plea or admission of prior convictions is voluntary and intelligent rather than adopting a rule of reversal per se. Under this approach, the court considers whether the record "affirmatively demonstrate[s] that the plea was voluntary and intelligent under the totality of the circumstances. [Citations.]" (*Id.* at p. 1178.) In other words, "[i]f the record fail[s] to disclose proper advisements and waivers, the appellate court [is] required to determine further, based on the totality of the circumstances, whether the defendant's [plea] . . . was voluntarily and intelligently made. This determination require[s] the appellate court to examine the entire proceeding." (*People v. Allen* (1999) 21 Cal.4th 424, 438.)

Similarly, in *People v. Mosby* (2004) 33 Cal.4th 353 (*Mosby*), the Supreme Court reiterated its commitment to application of a harmless error analysis in this context. It further elaborated: "In replacing the old rule, the focus was shifted from whether the defendant received express rights advisements, and expressly waived them, to whether the defendant's admission was intelligent and voluntary because it was given with an understanding of the rights waived. After our *Howard* decision, an appellate court must go beyond the courtroom colloquy to assess a claim of *Yurko* error. [Citation.] Now, if the transcript does not reveal complete advisements and waivers, the reviewing court must examine the record of 'the entire proceeding' to assess whether the defendant's admission of the prior conviction was intelligent and voluntary in light of the totality of circumstances." (*Id*. at p. 361.) In *Mosby*, defendant was found to have voluntarily and intelligently admitted his prior conviction where he was informed that he did not have to admit the prior conviction but could have had a jury or court trial, he had just participated in a jury trial where he had confronted witnesses and remained silent, and he had experience in pleading guilty in the past, i.e., the very conviction he was then admitting. (*Id.* at p. 365.)

---

**3**    *Boykin v. Alabama* (1969) 395 U.S. 238 (*Boykin*).

Here, defendant was advised of and expressly waived his right to a jury trial on the allegation of prior convictions. As the Attorney General concedes, however, he was not advised on the record of his privilege against self-incrimination, his right to confront the witnesses against him, or the penal consequences of his admission to the prior convictions.

The Attorney General argues that defendant nonetheless understood his constitutional rights when he admitted his prior convictions. The Attorney General points to defendant's "two previous trips through the criminal justice system" as giving defendant "a practical education of the system" and the ability to understand the constitutional rights he was waiving in admitting the priors. Acknowledging that the record does not disclose whether defendant's prior convictions resulted from plea bargains or jury trials, the Attorney General asserts that if the convictions resulted from pleas, then defendant had been given the *Boykin-Tahl* advisements and therefore would have understood the privilege to avoid self-incrimination and the right to confrontation. (Citing *Mosby*, *supra*, 33 Cal.4th at p. 365.) On the other hand, if the previous convictions occurred after jury trials, defendant would have witnessed his counsel cross-examining witnesses and would have discussed with his counsel whether to testify. He therefore would have understood he had the right of confrontation and the right to remain silent. (Citing *Mosby*, *supra*, 33 Cal.4th at p. 364.) The Attorney General also points out that defendant was assisted by counsel throughout his admissions to the priors, and counsel joined in the waiver for both admissions after the court gave defendant the opportunity to consult with his counsel.

Based on the totality of the circumstances, however, where there was no explicit advisement of the right to confront his accusers or the right to remain silent, it is not possible here to find defendant's admissions of guilt were "voluntary and intelligent." The state of the record here leaves us no alternative but to reverse the true findings on defendant's prior offenses and prison term, and to remand for a new proceeding to determine the validity of these allegations. (See *People v. Johnson* (1993) 15 Cal.App.4th 169, 178.)

7

While a defendant's familiarity with the criminal justice system is relevant to his knowledge and sophistication regarding his legal rights, because the record does not reflect whether the prior convictions resulted from trials or guilty pleas, "we are unable to determine whether or not [defendant] was ever informed on *any* occasion of his privilege against compulsory self-incrimination and/or his right to confront his accusers." (*People v. Witcher* (1995) 41 Cal.App.4th 223, 231 (*Witcher*).) Thus, "[defendant's] prior convictions, standing alone, [do not] serve to establish that he was aware of his rights. Were we to conclude otherwise, there would be no need to admonish *any* defendant who had previously been convicted of a crime, and we decline to adopt such a rule." (*Ibid.*)

We do not find defendant's past experience in the criminal justice system to be a significant factor indicating that he was fully aware of his constitutional rights. The prior convictions were not especially recent, having occurred in 2005 and 2008, nor are two prior convictions numerous enough to consider defendant knowledgeable and sophisticated with regard to the criminal justice system. In addition, the admissions here took place prior to trial, and therefore he did not yet have the opportunity to experience his attorney confronting witnesses and had not yet testified or declined to do so.

Finally, as to defendant's representation by counsel and opportunity to discuss the admissions with his counsel, we find no basis in the record upon which to evaluate the likelihood of the inference the Attorney General urges us to draw that defendant's rights were fully explained to him by his counsel. There is no basis upon which to conclude that the shortcomings of the trial court's admonitions were rendered nonprejudicial. (See *Witcher*, *supra*, 41 Cal.4th at p. 232.)

Defendant also was not advised regarding the penal consequences of his admissions. (See *Yurko*, *supra*, 10 Cal.3d at p. 865.) However, we need not discuss the failure to admonish him in that regard in light of our conclusion that the lack of advisements regarding his constitutional rights requires reversal.

## II.    The *Pitchess* Motion

Defendant requests that we review the in camera proceedings of his *Pitchess* motion to determine whether the trial court properly ruled on the discoverability of information contained in the personnel and administrative files of the arresting officers, Deputies Tomlinson and Clark.  We review the trial court's ruling on the *Pitchess* motion for abuse of discretion.  (*People v. Hughes* (2002) 27 Cal.4th 287, 330.)  The trial court conducted an in camera hearing at which the custodian of records was placed under oath and presented the personnel files of Deputies Tomlinson and Clark.  The court reviewed the potentially responsive documents outside the presence of all persons except the custodian and his counsel.  The trial court made the appropriate inquiries concerning whether the custodian had produced all potentially responsive documents, and described thoroughly, in the sealed transcript of the hearing, the documents produced.  (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229.)  We have reviewed the sealed record of the in camera proceeding and conclude the trial court appropriately exercised its discretion in concluding that there was no relevant, discoverable material to be disclosed.  We find no error in the trial court's ruling.

### DISPOSITION

The judgment is affirmed as to defendant's convictions of driving under the influence of alcohol or drugs, two counts of hit and run driving, and vandalism causing damage under $400.  That part of the judgment relating to the true findings on allegations of defendant's prior convictions and prison term is reversed, and the cause remanded for

new proceedings, either by trial or admission, with proper advisements and waivers of those priors, and for resentencing.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


SUZUKAWA, J.

We concur:


WILLHITE, Acting P. J.


MANELLA, J.