Filed 1/8/25  P. v. Martinez CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>SALVADOR ERIC MARTINEZ,<br><br>　　Defendant and Appellant. | B335299<br><br>(Los Angeles County<br>Super. Ct. No. BA507358) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Robert C. Vanderet, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Megan L. Denkers Baca, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Stephanie C. Brenan and Gabriel Bradley, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Salvador Eric Martinez appeals the judgment entered following a jury trial in which he was convicted of first degree residential burglary (Pen. Code,[1] § 459) with a person present (§ 667.5, subd. (c)(21)). Appellant admitted suffering a prior conviction qualifying as a "strike" under the Three Strikes law. (§§ 667, subds. (b)–(j), 1170.12, subds. (a)–(d).) The trial court sentenced appellant to a term of eight years in state prison, consisting of the mid-term of four years doubled for a prior strike.

Appellant contends that his constitutional right to effective assistance of counsel was infringed because defense counsel failed to request a jury instruction on voluntary intoxication. Appellant asserts that there was no justifiable reason to withhold the request, and the instruction was essential for the jury to understand the defense theory of the case. We conclude that appellant fails to demonstrate ineffective assistance of counsel. We additionally find, however, that appellant's second argument—that he was not properly admonished before admitting a prior strike—has merit, and we therefore remand for further proceedings on the prior strike conviction and a new sentencing hearing.

## FACTUAL BACKGROUND

Jorge Monroy lived on South Union Avenue in Los Angeles. He rented a room in a three-bedroom apartment from Carmen Rosales, who lived in another room of the apartment.

On the afternoon of March 19, 2022, Monroy, who had just returned home from work, was alone in the apartment. Rosales was hospitalized at the time. Monroy heard a knock on the back door and saw appellant standing there. Monroy had known appellant, who is Rosales's son, for several years, and Monroy used to socialize with appellant when appellant lived in the apartment. By March 2022,

---

[1] Undesignated statutory references are to the Penal Code.

however, appellant had not lived in the unit for over a year, and instead had been sleeping on the sidewalk nearby.

Monroy opened the door and told appellant that he could not let him enter. Appellant asked to come in again, and Monroy again declined. When Monroy saw that appellant was beginning to get upset, Monroy closed the door and walked into his bedroom. The bedroom was near the door and Monroy could see and talk to appellant through the bedroom window.

Appellant continued asking to be let in, and as Monroy repeatedly refused, appellant grew angrier and louder. Appellant suddenly yanked on the bars covering Monroy's window, apparently trying to dislodge them. He eventually gave up and instead grabbed a broom standing nearby. Using the broom handle as a club, appellant smashed Monroy's window and destroyed a window screen, causing glass and other debris to fly toward Monroy.

After appellant broke much of the window's glass, he reached his hand into the bedroom, rifling through Monroy's possessions, knocking some over, including a microwave, and taking others. He then set his sights on Monroy's second window. Grabbing a metal pipe (the broom having broken in the mayhem), appellant smashed the glass with a loud crash.

Appellant then ransacked items from the second window. He pulled out a bottle of wine or liquor, and grabbed a plastic bin where Monroy stored coins, jewelry, and rent money. Monroy was able to seize the rent money from appellant's hands, but appellant got away with the other items in the bin. Altogether, appellant carried off numerous items, including at least one bottle of wine or liquor, Monroy's personal papers, keys, snacks, various writing implements, change, and jewelry.

Around the time that appellant finished taking property from the second window, Monroy called 9-1-1, afraid that appellant would move on to other windows. After Monroy made the call, appellant walked

3

from the rear of the apartment building to the front. As he did so, he ripped up Monroy's papers and scattered the shreds and other items around the sidewalk. He then sat near the front door and started eating Monroy's snacks and drinking his alcohol.

Police officers arrived about 10 to 15 minutes after Monroy's 9-1-1 call. Officer Jason Mijangos made contact with appellant. Although appellant understood Officer Mijangos's commands, he initially did not comply and so was detained. Thereafter, appellant was cooperative with officers and the search, detention, and arrest all went without incident. Appellant had no problem understanding everything that Officer Mijangos said and was cognizant of what was happening. He appeared calm.

Officer Mijangos testified that appellant "might have appeared to be under the influence from an unknown narcotic," as he initially did not follow instructions to stand up, and that appellant's "pupils appeared to be that he was either coming down from being under the influence or he was currently under the influence." Officer Mijangos was not certain, however, that appellant was actually intoxicated.

When appellant was searched, bags containing Monroy's jewelry were found in his pockets. Monroy's keys and writing materials were also recovered.

## DISCUSSION

## I.    Appellant Fails to Demonstrate Ineffective Assistance of Counsel

Appellant first contends that trial counsel was ineffective for failing to request a jury instruction on voluntary intoxication, namely CALCRIM No. 3426.[2] Appellant asserts that an instruction on

---

[2] CALCRIM No. 3426 provides, in part, that the jury "may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. [The jury] may consider that evidence only in deciding whether the defendant acted . . . with" the requisite intent.

4

voluntary intoxication would have been consistent with his defense, and that by failing to request the instruction, counsel effectively withdrew the defense. According to appellant, had the instruction been given, there is a reasonable probability that the jury would have determined that specific intent was not proven and thus found appellant not guilty of burglary.[3]

### A. *Applicable legal principles*

The standard for deciding an ineffective assistance of counsel claim under either the Sixth Amendment to the United States Constitution, or article I, section 15 of the California Constitution, is " 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " (*In re Valdez* (2010) 49 Cal.4th 715, 729 (*Valdez*), quoting *Strickland v. Washington* (1984) 466 U.S. 668, 686 [104 S.Ct. 2052, 80 L.Ed.2d 674] (*Strickland*).) To establish ineffective assistance, a defendant must show both that "counsel's performance was deficient"—that is, the attorney's "representation fell below an objective standard of reasonableness" "under prevailing professional norms"—and that "the deficient performance prejudiced the defense." (*Strickland, supra*, 466 U.S. at pp. 687, 688; see also *Valdez, supra*, 49 Cal.4th at p. 729.)

In assessing a claim of deficiency, "[j]udicial scrutiny of counsel's performance must be highly deferential." (*Strickland, supra*, 466 U.S.

---

[3] Although claims of ineffective assistance of counsel are generally raised by petition for writ of habeas corpus (*People v. Pope* (1979) 23 Cal.3d 412, 426, overruled on another ground in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10), the claim may be made on appeal in limited circumstances, including when " 'there simply could be no satisfactory explanation' " for counsel's acts or failures to act. (*People v. Haskett* (1990) 52 Cal.3d 210, 248 (*Haskett*).) Because appellant makes this type of argument here, we exercise our discretion to address the issue.

at p. 689.)  The court "evaluate[s] the conduct from counsel's perspective at the time," avoiding the "distorting effects of hindsight." (*Ibid.*)  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "  (*Ibid.*)

A defendant who establishes deficient performance must still show prejudice.  (*Valdez, supra*, 49 Cal.4th at p. 729.)  "This second part of the *Strickland* test 'is not solely one of outcome determination. Instead, the question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." ' "  (*In re Hardy* (2007) 41 Cal.4th 977, 1019.) "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' "  (*Harrington v. Richter* (2011) 562 U.S. 86, 104 [131 S.Ct. 770, 178 L.Ed.2d 624].)  Rather, "[t]he likelihood of a different result must be substantial, not just conceivable."  (*Id.* at p. 112.)

**B.    *Analysis***

As noted, appellant contends that trial counsel was ineffective because she failed to request a jury instruction on voluntary intoxication (CALCRIM No. 3426) and, according to appellant, thereby effectively withdrew any such defense.  It is appellant's burden to prove ineffective assistance.  (*Haskett, supra,* 52 Cal.3d 210, 248.)  We conclude that appellant does not meet his burden.

1.    *Evidence of voluntary intoxication affecting appellant's ability to form specific intent is lacking.*

"Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent."  (§ 29.4, subd. (b).)  "Burglary is a specific intent crime. [Citation.]  It requires not only that a defendant enter a structure, but

6

that he or she do so with a particular objective in mind:  larceny (or any other felony)." (*People v. Hendrix* (2022) 13 Cal.5th 933, 939.)  A jury instruction on voluntary intoxication is a "pinpoint" instruction that the trial court is required to give only if properly requested.  (*People v. Verdugo* (2010) 50 Cal.4th 263, 295 (*Verdugo*).)  " '[A] defendant is entitled to such an instruction only when there is substantial evidence of the defendant's voluntary intoxication and the intoxication affected the defendant's "actual formation of specific intent." '  [Citation.]" (*Ibid.*)  Consequently, "[e]vidence of voluntary intoxication without evidence of its effect on a defendant's ability to formulate specific intent is insufficient to establish the defense."  (*People v. Serrano* (2022) 77 Cal.App.5th 902, 918 (*Serrano*).)

For example, in *People v. Williams* (1997) 16 Cal.4th 635, 677, our Supreme Court found that a voluntary intoxication instruction was unwarranted when the record contained comments that the defendant was " 'probably spaced out,' " " 'doped up,' " and " 'smokin' pretty tough' " around the time he committed four murders.  "Assuming this scant evidence of defendant's voluntary intoxication would qualify as 'substantial,' there was no evidence at all that voluntary intoxication had any effect on defendant's ability to formulate intent."  (*Id.* at p. 677–678.)

A similar analysis applies here.  Evidence that appellant may have been intoxicated at the time he committed the burglary was minimal.  Monroy testified that, around the time of the incident, appellant "wasn't like a normal person," and was not "in command" of his "five senses."  Monroy explained, however, that the basis for his observation was "the way that [appellant] reacted.  When I said no, and he hung onto the bars in the window, somebody that is in control of their five senses does not do that."  Appellant did not become "out of control" until Monroy repeatedly refused to let him enter the apartment, signifying that appellant's unhinged behavior was induced primarily (if not entirely) by anger.  Additionally, although Officer

7

Mijangos testified that appellant "might have appeared to be under the influence" based on his initial failure to follow an instruction and the appearance of his pupils, the officer noted that he was "not certain" of the assessment. Furthermore, Officer Mijangos did not observe appellant until after the incident, while there was evidence that appellant may have been drinking Monroy's alcohol prior to the officer's arrival.

Even if we were to assume that appellant was voluntarily intoxicated at the time of the incident, however, that would not lead us to conclude that the intoxication affected appellant's formation of specific intent. (See *Serrano, supra,* 77 Cal.App.5th at p. 918.) The evidence supports a contrary conclusion. The course of the burglary was not just a fleeting event. Appellant separately shattered two windows and reached in through each, picking and choosing what he wanted. The items stolen included jewelry, coins, alcohol, and snacks, and would have also included Monroy's rent money had Monroy not snatched it away. After taking numerous items, appellant disposed of the ones that held no value to him (ripping Monroy's papers into shreds), and kept the remainder, placing valuables such as jewelry in his pockets. Although appellant was clearly aggravated, he demonstrated deliberation and purposefulness in the burglary. Moreover, when police officers arrived shortly after the incident, appellant was generally cooperative, appeared calm, and had no problem understanding instructions.

Given this set of facts, substantial evidence did not support a theory that appellant's ability to form the specific intent for burglary was impaired by voluntary intoxication. If defense counsel had requested the instruction, the trial court likely would have refused it. (See *Verdugo, supra*, 50 Cal.4th at p. 295.) Accordingly, counsel's decision not to request the instruction was not ineffective assistance.

## 2. *The omission of a voluntary intoxication instruction could be considered reasonable trial strategy.*

Appellant, asserting that there was sufficient evidence to support a voluntary intoxication defense, contends there could be no conceivable tactical reason for trial counsel to withhold a request for a voluntary intoxication instruction. Appellant maintains that the instruction was entirely consistent with the defense theory, and that the instruction was essential for the jury to understand the defense.

In reviewing a claim of ineffective assistance, we do " ' " 'not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight.' " ' " (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 86.) Because the record contains no discussion regarding counsel's reasons for not requesting a voluntary intoxication instruction, appellant's claim of ineffective assistance will be rejected unless there could be no satisfactory explanation for the omission. (*People v. Castillo* (1997) 16 Cal.4th 1009, 1015.)

We conclude that trial counsel reasonably could have chosen not to request a voluntary intoxication instruction as a matter of trial strategy. Contrary to appellant's argument that his defense hinged on a lack of specific intent due to voluntary intoxication, the record reveals that the defense was based on a combination of factors. Although trial counsel repeatedly emphasized a claimed lack of specific intent, counsel did not ground the argument primarily on claimed intoxication. Instead, trial counsel focused on appellant's rage.

In trial counsel's opening statement, she stated that, after initially speaking with Monroy, appellant "completely broke down," "threw a tantrum," and while "incapable of containing his emotions and his frustration, lashed out." This line of reasoning was echoed in closing argument. Recounting the testimony, counsel stated that, after Monroy repeatedly refused to let appellant enter the apartment, appellant "completely became irrational and unreasonable, kind of throwing a tantrum," "lost complete control and was lashing out," was

9

"wreaking havoc and tossing things around," and was "seeing red, frustrated, overcome with emotion, not being able to come in." Counsel then argued: "I submit to you that my client had no specific intention to commit any theft, to do anything. Much like a child who throws a tantrum who is just wreaking havoc, there is no intention to do anything, it's just a tantrum."

Counsel also posited another reason that appellant lacked specific intent—that, based on appellant's actions soon after rummaging through the windows, he did not actually intend to steal anything. Counsel noted how appellant did not run or hide after Monroy called 9-1-1, but instead "took a seat" near the front door. Counsel continued, "Typically thieves, people who do things with the intent to steal, leave. They get their loot and they go. No one stays at the scene of the crime hoping to be caught."

Only then did counsel turn to the intoxication argument, recounting Officer Mijangos's testimony that appellant might have been under the influence of an unknown narcotic. Counsel continued to emphasize other reasons for appellant's behavior, however, stating: "I submit to you, people who are out of control and under the influence don't form specific intent. . . . [Appellant] did not form the specific intent to steal. He didn't have an intention. He was upset, he was frustrated, angry. Just lashed out. . . . [I]ndicia of an intent to steal, it means you take the goods and go, to leave, to hide, to discard of them. Not to stay at the scene and quite literally wait for the police, which is what we have here."

The record thus demonstrates that the defense strategy was not to focus on possible intoxication, but instead to argue lack of specific intent based on several factors, primarily that appellant threw a "tantrum." Requesting a voluntary intoxication instruction could have undercut appellant's defense by calling attention to a defense that was weak (intoxication) at the expense of theories that had better evidentiary support (throwing a "tantrum" and not leaving the scene).

Importantly, the evidence showed (and counsel argued) that appellant did not get upset and begin his rampage until his requests to enter the apartment were repeatedly denied. A theory that appellant lost control of his temper and lashed out was more compatible with this set of facts than an argument that appellant acted out because of intoxication. Anger is a common reaction to a denied request, something the jury was likely to understand.

We cannot find that counsel's performance fell below the prevailing standard of reasonableness simply because she chose to focus on defenses with better evidentiary support. Voluntary intoxication was an argument that was essentially tacked on to the larger theory that appellant ransacked Monroy's apartment in a fit of rage and did not intend to leave with any property. Counsel was not under an obligation to request a jury instruction on a theory that was largely peripheral to, and in some respects inconsistent with, the primary theory of the defense. (See *People v. Weaver* (2001) 26 Cal.4th 876, 926 ["where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions"]; see also *People v. Sedeno* (1974) 10 Cal.3d 703, 717, fn. 7, overruled on other grounds in *People v. Breverman* (1998) 19 Cal.4th 142, 165 [counsel should request instructions that explain theories upon which the defense "rests"].)

        3.     *There was no reasonable probability of a different outcome.*

Finally, if appellant were able to show that trial counsel was deficient, he would also need to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." (*People v. Kelly* (1992) 1 Cal.4th 495, 520.) Appellant fails to make this showing.

The jury instruction that appellant argues should have been requested, CALCRIM No. 3426, provides that the jury "may consider

evidence, if any, of the defendant's voluntary intoxication only in a limited way," "in deciding whether the defendant acted" with the requisite intent, in this case, permanently depriving Monroy of his property or removing it for an extended period of time. Other instructions that were given in this case, however, adequately informed the jury on the requirement of specific intent. (See *People v. Garcia* (2022) 76 Cal.App.5th 887, 894 [" 'The failure to give an instruction on an essential issue, or the giving of erroneous instructions, may be cured if the essential material is covered by other correct instructions properly given' "]; *People v. Castillo* (1997) 16 Cal.4th 1009, 1016 [" ' "The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole" ' "].)

For example, the jury was instructed with a modified version of CALCRIM No. 251, including that "burglary requires proof of a specific intention or mental state," and that appellant "must not only have committed the prohibited act, but must have done so with a specific intent." The jury was then instructed with a modified version of CALCRIM No. 1700, which contained the following language: "To prove that the defendant is guilty of the crime, the People must prove, one, that the defendant entered a building or a room within a building; and two, at the time when he entered, he intended to commit theft." Additionally, the jury was instructed on theft with CALCRIM No. 1800, providing in part: "When the defendant took the property, he intended to deprive the owner of it permanently, or to remove it from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of that property."

As noted above, defense counsel repeatedly focused on the issue of specific intent, including in connection with appellant's claimed intoxication. Contrary to appellant's argument that trial counsel "effectively withdrew" the defense of a lack of specific intent, the issue was front and center before the jury.

12

Moreover, if a voluntary intoxication instruction had been requested and given, there is not a reasonable probability that the verdict would have been more favorable to appellant. Evidence of voluntary intoxication was thin, and evidence that it affected appellant's ability to form specific intent was lacking. Meanwhile, the evidence of guilt was overwhelming. Appellant not only "entered" Monroy's apartment by breaking the windows and reaching in, he deliberately picked and chose from items that were within arm's reach. He kept property that he determined had sufficient value, stuffing some of it in his pockets, and discarded the rest.

In determining whether appellant committed burglary, the jury was faced with the issue of whether he formed specific intent. In fact, the jury posed a question during deliberations, asking "how we establish or define intention." After being again instructed that "words not specifically defined in the instructions are to be used in their ordinary, everyday meaning," the jury deliberated further, finally concluding that the charge of burglary (including specific intent) was proven beyond a reasonable doubt. It is not reasonably probable that a voluntary intoxication instruction would have changed this result.

## II. Remand Is Required Due to Lacking Advisements

Appellant's second primary argument is that the trial court erred in sentencing him as a second strike offender without proper advisement or waiver of his constitutional rights. We agree with this contention.

### A. *Relevant proceedings*

Before opening statements, outside the presence of the jury, counsel and the trial court discussed and agreed upon bifurcating aggravating circumstances and prior strikes from the trial of the substantive offense. The court noted, in reference to appellant's prior record, "I mean, usually people will stipulate to those afterwards, but we'll deal with that when we get to it."

13

During jury deliberations, again outside the presence of the jury, defense counsel informed the court: "With respect to the priors, [appellant] would waive the right to jury on the priors." When the trial court inquired, "Will you stipulate to them or just have a court trial?" counsel responded, "We would likely stipulate. I'd wait to hear the verdict and then we'll move from there."

After the verdict was read and the jury dismissed, appellant admitted the prior strike convictions:

"[Prosecutor]: Mr. Salvador Eric Martinez, do you admit that you were charged in—or excuse me, convicted in case number BA432498, with violations of Penal Code section 211 and Penal Code section 459 in the first degree with a conviction date of September 10th, 2015, in Los Angeles County?

"[Appellant]: Yes.

"[Prosecutor]: Counsel join in the stipulation?

"[Defense counsel]: Yes.

"[Prosecutor]: People join.

"The Court: Okay."

At the sentencing hearing, the trial court sentenced appellant "to serve eight years in the state prison, which is the midterm doubled" for a prior strike.

## B.    *Applicable legal principles*

"When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary. [Citation.] As a prophylactic measure, the court must inform the defendant of three constitutional rights—the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers—and solicit a personal waiver of each." (*People v. Cross* (2015) 61 Cal.4th 164, 170 (*Cross*).) These required advisements are known as "*Boykin/Tahl* admonitions." (*People v. Howard* (1992) 1 Cal.4th 1132, 1174 (*Howard*), citing *Boykin v. Alabama* (1969) 395 U.S. 238 [89 S.Ct. 1709, 23 L.Ed.2d 274] (*Boykin*); *In re Tahl* (1969) 1 Cal.3d

14

122 (*Tahl*).) The same requirements of advisement and waiver apply when a defendant is asked to admit the truth of a prior conviction allegation that can subject the defendant to increased punishment. (*Cross, supra,* at p. 170, citing *In re Yurko* (1974) 10 Cal.3d 857, 863 (*Yurko*).)

Deficiencies in advisement and waiver in prior conviction proceedings, often referred to as "*Yurko* error," are "not reversible per se." (*Cross, supra,* 61 Cal.4th at p. 171.) Rather, the reviewing court looks to whether "the record affirmatively shows" that an admission "is voluntary and intelligent under the totality of the circumstances." (*Howard, supra,* 1 Cal.4th at p. 1175; *Cross, supra,* 61 Cal.4th at p. 171.) The appellate court examines " 'the entire proceeding' to assess whether the defendant's admission of the prior conviction was intelligent and voluntary in light of the totality of circumstances.' " (*People v. Mosby* (2004) 33 Cal.4th 353, 361 (*Mosby*).)

### C.    *Analysis*

This case presents a "silent record," in that the record is devoid of any express advisement or waiver of rights before appellant's admission of a prior conviction. (See *Mosby, supra,* 33 Cal.4th at p. 361.) Trial counsel, acting on appellant's behalf, stated that appellant "would waive the right to jury on the priors," and would "likely stipulate" to prior strikes. Appellant later admitted to the prior strike convictions, as read into the record by the prosecution. Notably absent in any of these exchanges was an express advisement of appellant's *Boykin/Tahl* rights or an associated personal waiver by appellant.

Respondent asserts that the totality of the circumstances warrants a finding that appellant's admission of the prior convictions was voluntary and intelligent. Respondent bases this argument largely on the fact that appellant had just gone through a jury trial. Citing *Mosby, supra,* 33 Cal.4th at page 364, respondent notes that appellant had exercised his right to remain silent at trial and, through counsel,

15

confronted witnesses at trial. *Mosby,* however, recognized that in similar cases, "a jury trial on a substantive offense preceded the defendants' admissions of prior convictions." (*Id.* at p. 362.) As in this case, though, "[t]hese defendants were not told on the record of their right to trial to determine the truth of a prior conviction allegation. Nor did they expressly waive their right to trial. In such cases, in which the defendant was not advised of the right to have a trial on an alleged prior conviction, we cannot infer that in admitting the prior the defendant has knowingly and intelligently waived that right as well as the associated rights to silence and confrontation of witnesses." (*Ibid.*)

Respondent urges that trial counsel's statements, prior to the verdict, that appellant "would waive the right to jury on the priors," and "would likely stipulate," as well as related comments by the prosecution and the trial court, demonstrate that appellant was aware of his right to a jury trial on the prior convictions, supporting a finding that there was a voluntary and intelligent admission. A similar argument was rejected in *People v. Johnson* (1993) 15 Cal.App.4th 169, 178, in which a brief reference by the trial court relating to a jury trial for prior convictions was insufficient to demonstrate that the defendant " 'not only was aware of' " his rights, " 'but was also prepared to waive them as a condition to admitting his prior offenses.' " (See also *Mosby, supra,* 33 Cal.4th at p. 362, citing *Johnson.*)

Respondent further argues that appellant's prior criminal record supports the conclusion that his admission of prior convictions was sufficiently voluntary and intelligent. " '[A] defendant's prior experience with the criminal justice system' is, as the United States Supreme Court has concluded, 'relevant to the question [of] whether he knowingly waived constitutional rights.' " (*Mosby, supra,* 33 Cal.4th at p. 365.) While experience with the justice system is a recognized factor, without more than respondent's assertion that "[a]ppellant was presumably admonished of his rights in some of or all these previous cases," we cannot find a voluntary and intelligent admission here. (See

16

*People v. Christian* (2005) 125 Cal.App.4th 688, 698 [although defendant had prior convictions, the circumstances were too unclear to find "present knowledge and understanding of his rights"].)

Contrary to respondent's arguments, the deficiencies in this case are more akin to circumstances presented in *Cross*. In *Cross,* defense counsel stipulated that the defendant was convicted of a prior felony offense, and the trial court immediately accepted the stipulation without advising the defendant of his rights. (*Cross, supra,* 61 Cal.4th at pp. 169, 180.) The trial court did not inquire whether the defendant discussed the stipulation with counsel, nor did the court inform the defendant of his right to a trial on the prior conviction allegation. (*Id.* at p. 180.) Determining that the record did not demonstrate that the defendant was aware of his right to a fair determination of the prior conviction allegation, the Supreme Court found that the stipulation must be set aside. (*Ibid.*) Similarly, in *People v. Farwell* (2018) 5 Cal.5th 295, 308, our Supreme Court set aside a waiver "tantamount to a guilty plea" because the record was insufficient to show that the defendant "entered a constitutionally valid waiver of his trial rights."

Examination of the record in this matter, and consideration of the totality of the circumstances, likewise leads to the conclusion that appellant's admission of prior strikes cannot be considered voluntary and intelligent. No express advisements were given and no personal waivers were obtained. The scant indications that appellant may have been aware of his rights and prepared to waive them are too insubstantial to support such a finding. Accordingly, appellant's admission to the prior robbery and burglary convictions must be set aside.

## DISPOSITION

The conviction is affirmed. The judgment with respect to the sentence is reversed. The matter is remanded to the trial court with directions to first, either hold a trial on the prior strike allegation or properly obtain appellant's personal admission of the prior strike conviction(s) with the requisite advisements and waivers, and second, hold a new sentencing hearing.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


CHAVEZ, J.


RICHARDSON, J.